ELGIN WIND POWER & PUMP CO. v. NICHOLS et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1901.)

No. 713.

PATENTS—SUIT FOR INFRINGEMENT—RECOVERY OF PROFITS.

In a suit for infringement of patents relating to windmills, which were for improvements only, not indispensable to an operative mill, it cannot be assumed that the entire profits made by the defendant on windmills sold which contained the infringing devices were due to such devices, but

the burden rests upon the complainant to prove by competent and satis-factory evidence what portion of the profits were due to such improve-ments, to entitle him to recover.

## Appeal from the Circuit Court of the United States for the North-ern Division of the Northern District of Illinois.

The interlocutory decree in this case, affirmed on appeal to this court (12 C. C. A. 578, 65 Fed. 215, 24 U. S. App. 542), found that the appellant had infringed two patents for improvements in windmills, Nos. 240,607 and 390,-698, issued respectively on April 26, 1881, and October 9, 1888, to W. D. Nichols. The bill, alleging no damages, sought only an injunction and ac-counting for profits, and in obedience to an order of reference "to ascertain and report an account of gains, profits, and advantages which the defendant had received or which had arisen or accrued to it," the master made a report which in respect to matters of fact was based upon a stipulation of the par-ties, and in no important particular is disputed. His conclusion was that the complainants on the proof made were entitled to nominal damages only. On exceptions filed by the appellees the court decreed a recovery of $5,294.49 and costs. It appears, and is undisputed, that during the time covered by the accounting, October 1, 1888, to September 1, 1895, the appellant manu-factured and sold, in infringement of the first patent, 125 pumping mills for the aggregate sum of $4,255, and in infringement of the second patent 186 power mills for $26,007, amounting together to the sum of $30,262. Wheth-er this is "less discount and commission" is not stated. The cost of labor and material for all these mills was $15,261, leaving the gross profit $15,001. The appellant was also engaged in the manufacture and sale of other articles, the total sales during the period covered by the accounting, less commission and discount, being $238,031.48, and the total expense (not including labor and material) for carrying on the business being $76,348.13. The proportion-ate amount of this general expense allotted by the master to the windmills was $9,706.51, which deducted from the gross left a net profit of $5,294.49, the amount of the decree. Of this profit, if apportioned on the same basis between the two kinds of mills, $134.08 only must be regarded as derived from the pumping mills, and the remainder, $5,160.41, from the power mills. No proof of profits, except on the basis stated, was offered. The power mills in question, besides the device of the second Nichols patent, contained the device covered by patent No. 349,197, issued on September 14, 1886, upon an application filed April 3, 1886, to Truman C. Albee. The master, finding that the Albee and Nichols devices were separate and independent improvements, capable of use either without the other, and that the testimony did not sus-tain the contention that all the profits arising from the manufacture and sale of the infringing machines was due to the use of the Nichols inventions, and holding it incumbent on the plaintiff to show what, if anything, was due to the unlawful appropriation of the Nichols inventions, and what to other causes, and particularly to the Albee device, came to the conclusion stated, that the right to nominal damages only was established. The specification in patent No. 240,607 contains this: "My invention relates to improvements in the method of mounting windmills, the object being to lessen the friction and secure a smooth and easy movement of the parts, so that the apparatus will readily adjust itself to the direction of the wind; and my invention con-sists in balancing and supporting the windmill on a center or pivotal bearing, and in connection therewith the mechanism hereinafter described for com-municating the reciprocating motion of the pitman to the pump rod. * * * The operation is as follows: The whole rotating mechanism of the mill is supported, balanced, and turns upon the bridge, E, as a center or pivot, thus accommodating itself with great freedom and ease to the direction of the wind, and by means of the connecting mechanism described the motion of the pitman is communicated to the pump rod without causing the least wrench-ing or disturbance or irregularity in the motion of the same, by reason of the rotation of the hollow shaft, C." The first and fifth claims read as follows: "(1) The rotating carriage of the windmill, terminating in a closed end or pivotal point at its bottom, in combination with the plate, E, upon which the rotating carriage turns and is balanced and supported, substantially

as specified." "(5) In a windmill, the hollow rotating slotted carriage, terminating at its bottom in a pivotal point, in combination with the reciprocating pitman inside thereof and rings working on the outside thereof, to which the pump rod is attached, substantially as specified." The specification of No. 390,698 contains this: "This invention relates to devices for correcting the side draft of geared tailless windmills, and is an improved device for that purpose. It consists in the mill having a pawl engaging with an annular rack on the tower, as hereinafter stated, when said rack is permitted a slight rotation upon its support, and a spring cushion is employed to resist such rotation. This feature prevents any sudden wrenching of the tower, which would result if the rack were immovable." The claim reads as follows: "The combination, in a windmill, of the tower cap, the movable rim mounted on the cap, and the spring interposed between lugs upon the cap and rim for cushioning the strain on the tower, substantially as specified." The Albee device, it is explained in the specification, is designed to overcome the "side draft" in windmills, "caused by the tendency of the gear wheel on the horizontal shaft to climb around the gear wheel on the vertical shaft." The claims read in this wise: "The combination, with the bell-crank lever, J, connected at one end to the sails of the mill and at the other end to a rod reaching down towards the ground, of the lever, M, operated by said first-named lever and the loose pawl, P, and its actuating vane, E, whereby the same operation which throws the sails out of the wind will simultaneously unlatch the pawl and leave the mill free to swing on the tower, substantially as specified." The court below, after quoting from Garretson v. Clark, 111 U. S. 120, 14 Sup. Ct. 291, 28 L. Ed. 371, and City of Elizabeth v. American Nicholson Pavement Co. 97 U. S. 126, 24 L. Ed. 1059, touching the burden of proof, said: "I am inclined to the opinion that the Nichols invention of April 26, 1881, relates to an entire structure. The mills when constructed under this patent being an entirety and unlike other mills, his second invention would be an improvement upon the first. The Albee device, it would seem, could only be used in connection with the Nichols mill, and was useful only when the mill itself was not in operation. It would seem to have been an advantage in selling the Nichols mill, but to what extent is not shown by the evidence. I think the burden of proof in such case should be cast upon the infringer. When he unlawfully makes use of an entire thing which is protected by a patent, and adds to that a device which may give some additional value to it, he should be able to show, and should be required to show, what added value the superadded device gave to the machine. I am of opinion, therefore, that the master erred in holding that the complainant could recover only nominal damages, and that he should have reported the net profits, namely, the sum of $5,294.49." In the brief for the appellees are cited, in addition to the cases mentioned above, Seabury v. Am-Ende, 152 U. S. 561, 14 Sup. Ct. 683, 38 L. Ed. 553; Crosby Steam-Gauge & Valve Co. v. Consolidated Safety-Valve Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809; Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566; Holmes v. Truman, 29 U. S. App. 572, 14 C. C. A. 517, 67 Fed. 542; Tuttle v. Claflin, 22 C. C. A. 138, 76 Fed. 227; Rose v. Hirsh, 36 C. C. A. 132, 94 Fed. 177; Morss v. Form Co. (C. C.) 39 Fed. 468. In the brief for the appellant: Tilghman v. Proctor, 125 U. S. 136, 151, 8 Sup. Ct. 894, 31 L. Ed. 664; Dobson v. Carpet Co., 114 U. S. 439, 5 Sup. Ct. 945, 29 L. Ed. 177; Blake v. Robertson, 94 U. S. 728, 28 L. Ed. 245; New York v. Ransom, 23 How. 487, 16 L. Ed. 515; Philp v. Nock, 17 Wall. 460, 21 L. Ed. 679; Rude v. Westcott, 130 U. S. 152, 167, 9 Sup. Ct. 463, 32 L. Ed. 888; Robbins v. Watch Co., 53 U. S. App. 406, 27 C. C. A. 21, 81 Fed. 957; Forbush v. Bradford, Fed. Cas. No. 4,930; The Tremolo Patent, 23 Wall. 518, 23 L. Ed. 97; Hitchcock v. Tremaine, Fed. Cas. No. 6,539; Brady v. Atlantic Works, Fed. Cas. No. 1,795; Calkins v. Bertrand (C. C.) 8 Fed. 755.

D. B. Sherwood and Ephraim Banning, for appellant.

Charles Wheaton, for appellee.

Before WOODS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The general rule is clear that in an accounting of profits derived from the infringement of a patent the plaintiff has the burden of proof, and the infringer is chargeable only with the actual gains and advantages derived from the use of the invention. The scope of the rule is well defined in Garretson v. Clark, where it is said:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated. The rule on this head is aptly stated by Mr. Justice Blatchford in the court below. 'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.'"

In Dobson v. Carpet Co., where the infringement was of a design for carpets, it was said:

"This court has, in a series of decisions, laid down rules as to what are to be regarded as 'profits to be accounted for by the defendant,' and what as 'actual damages,' in suits for the infringement of patents; and no rule has been sanctioned which will allow, in the case of a patent for a design for ornamental figures created in the weaving of a carpet, or imprinted on it, the entire profit from the manufacture and sale of the carpet, as profits or damages, including all the profits from the carding, spinning, dyeing, and weaving, thus regarding the entire profits as due to the figure or pattern, unless it is shown by reliable evidence that the entire profit is due to the figure or pattern. * * * The same principle is applicable as in patents for inventions. The burden is upon the plaintiff, and if he fails to give the necessary evidence, but resorts, instead, to inference and conjecture and speculation, he must fail for want of proof. * * * There is but one safe rule,—to require the actual damages or profits to be established by trustworthy legal proof."

In Blake v. Robertson the patent was for combinations relating to a stone-breaking machine, apparently not less an entirety than a windmill, and it was there said:

"No license fee charged by the complainant is shown. The burden of proof rests upon him. Damages must be proved. They are not to be presumed. The complainant made a profit of $40 an inch on the width of the jaws of the numerous machines he had sold. But inventions covered by other patents were embraced in those machines. It was not shown how much of the profit was due to those other patents, nor how much of it was manufacturer's profit. The complainant was therefore entitled only to nominal damages."

To show an exception from the rule or a distinction by which to justify the decree in the present case, the decision in City of Elizabeth v. American Nicholson Pavement Co., 97 U. S. 126, 24 L. Ed. 1000, is relied upon. The infringement in that case was of the Nicholson reissued patent for "a new and improved wooden pavement," of which, in discussing the question of profits, the court, at page 141, 97 U. S., and page 1007, 24 L. Ed., said:

"The Nicholson pavement was a complete thing, consisting of a certain combination of elements. The defendants used it as such,—the whole of it, * * * Equally without foundation is the position taken by the appellants that other pavements, approaching in resemblance to that of Nicholson, were open to the public, and that the specific difference between those pavements and Nicholson's was small, and that therefore the Nicholson patent was entitled to only a small portion of the profit realized. Nicholson's pavement, as before said, was a complete combination in itself, differing from every other pavement. The parts were so correlated to each other, from bottom to top, that it required them all, put together as he put them, to make the complete whole, and to produce the desired result. The foundation impervious to moisture, the blocks arranged in rows, the narrow strips between them for the purposes designated, the filling over those strips, cemented together, as shown by the patent, were all required. Thus combined and arranged, they made a new thing, like a new chemical compound. It was this thing, and not another, that the people wanted and required. It was this that the appellants used, and, by using, made their profit, and prevented the appellee from making it. It was not the case of a profit derived from the construction of an old pavement together with a superadded profit derived from adding thereto an improvement made by Nicholson, but of an entire profit derived from the construction of his pavement as an entirety."

It is possible to see the truth of the holding in that case, but in the present case we are not able to perceive or to believe that by using the Nichols inventions the appellant made the entire profit derived from the manufacture and sale of windmills. The second patent is only for an attachment, which doubtless may be usefully employed, especially in power mills, but if left off or removed no equivalent in its place is imperative. It is not an improvement upon the first invention, though it may, of course, be used in connection therewith. Like the Albee device, it is an independent improvement, which may be used upon any windmill in which there is on the tower an annular rack which is "permitted a slight rotation upon its support." There can, therefore, be no good reason for supposing that the profits derived from the manufacture and sale of the mills in which that device was employed were all due to its use. The first patent is more important, in that it shows improvements upon indispensable parts of a windmill, but it does not in itself, like the Nicholson invention, constitute "a complete thing," certainly not "a new thing, like a new chemical compound." On the contrary, windmills resembling in general structure and in many essential parts mechanically identical with the Nichols mills had been long in use before this patent was applied for. It does not profess to be for an entire device, but for improvements only, and they not general and comprehensive of an entire mill, but limited to "the method of mounting," of which the specified purpose is to lessen friction and secure a smooth and easy movement of the parts designated. The claims differ in minor particulars, but no one or all of the five can be regarded as embodying a complete windmill, the entire profit of the manufacture and sale of which should, or could fairly, be attributed to the presence of the patented combinations.

The decree below will be reversed, and the cause remanded, with direction to give a decree for nominal damages only, unless in the discretion of the court there shall be another reference for the purpose of admitting competent evidence of profits.