### CLARK v. JOHNSON et al.

(Circuit Court of Appeals, Seventh Circuit. April 23, 1912.)

No. 1,819.

PATENTS (§ 322\*)—INFRINGEMENT—ACCOUNTING FOR PROFITS.

On an accounting for infringement of the Hurlbut reissue patent, No. 11,696 (original No. 563,664), for a dental spittoon, a finding by the master affirmed that the entire value of defendant's article as a marketable commodity was attributable to the infringing features, and that the burden rested on defendant to show what part of its profits arose from other sources, and for lack of such proof that complainant was entitled to recover all profits.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 590–595; Dec. Dig. § 322.\*

Accounting by infringer of patent for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

Appeal from the Circuit Court of the United States for the District of Indiana.

Suit in equity by Albert C. Clark against George E. Johnson, L. E. Hunter, Elizabeth E. Chapin, administratrix of A. A. Chapin, deceased, and W. P. Denny. From final decree, complainant appeals. Reversed.

On March 14, 1902, appellees were adjudged to have infringed claims 1, 2, 3, and 4 of letters patent, reissue No. 11,696, granted September 27, 1898, to F. Hurlbut, and duly assigned to appellant, hereinafter termed complainant (original No. 563,661, granted July 7, 1896), for a dental spittoon. An injunction was issued as prayed, and an accounting ordered. For this purpose the cause was referred to a special master, Mr. Thomas J. Logan, who was required to take the evidence and report to the court his conclusions upon certain questions propounded in the decree, among others, several directing the master to ascertain what profits and damages appellant was entitled to, if any. The claims in suit read as follows, viz.:

"1. In a spittoon, an inner and an outer bowl, the inner bowl being revoluble; and a water-injector adapted to direct a jet of water against said revoluble bowl to revolve the same.

"2. A dental spittoon having an outer and an inner bowl, the inner bowl being revoluble within the outer bowl; a water-injector adapted to throw a stream of water against the inner surface of the inner bowl; and an adjustable fixture carrying the injector by which it is made removable from the inner bowl.

"3. In a dental spittoon, an inner bowl and an outer bowl, the inner bowl being revoluble; a water-injector held to direct water against the inner surface of the inner bowl to revolve the same; and a fixture which holds the water-injector, the water-injector being adjustable in the fixture to change the direction of the stream which it directs against the revoluble bowl to modify the speed of the revolution of the bowl.

"4. In a dental spittoon, an outer and an inner bowl, the inner bowl being revoluble in the outer bowl; the water-injector for directing the stream of water against the surface of the inner bowl to revolve the same; and a removable cap placed over the upper edges of the two bowls secured to the outer bowl."

Appellee's device is known as the "Peerless spittoon."

Questions 5, 6, 7, and 8, submitted to the master, read as follows, viz.:

"5. To what extent the invention of the claims in suit is for a new machine, and to what extent an improvement in an old machine.

"6. Whether defendants' infringing spittoons contain other features not covered or included in the claims in suit, and, if so, the proportionate value such features sustain to the entire spittoon.

"7. Whether defendants' spittoons contain any improvements of value not covered by said claims in suit, but which belong to defendants.

"8. Whether the defendants' spittoons would be useless for their special purpose without the use of complainant's invention, and whether known substitutes would render the defendants' spittoons salable."

In reply to question 5, the master reports as follows, viz.: "The following parts were used in the Peerless spittoon during the infringing period (not naming the infringing parts) to make it an operative dental spittoon: (1) An upright iron rod, with spreading base, known as the supporting stand for the flushing device. (2) Iron bracket-arms to hold the bowls, or flushing device, which was attached, by a movable slide, to the upright iron rod. (3) Hose or tubing, with metal connections, to supply running water to the bowls. (4) Hose or tubing, with metal connections, to carry waste water from bowls. (5) Automatic saliva ejector, consisting of rubber tubing and connections. (6) Mouthpiece for saliva ejector tubing. (7) Valve connections for nozzle and ejector. (8) Water regulator or floor valve. (9) Gold and gas trap. (10) Glass holder and connection. (11) One water outlet and valve above bowl."

In answer to said question 6, the master reports as follows, viz.: "(a) Defendants' infringing spittoons contain other features not covered or included in the claims in suit. (b) The proportionate value such features sustain to the entire spittoon has not been developed by the defendants' evidence."

To question 7, the master replies: "Yes; defendants' spittoons contain im-

provements of value not covered by said claims in suit, which belong to defendants."

Reporting as to question 8, the master says: "Defendants' spittoons would be useless for their special purpose without the use of complainant's invention, i. e., the flushing device, unless a serviceable substitute was put in its place. The White dental flushing device, known as the 'Barker mill' device, was a known substitute, which would render the defendants' spittoons salable."

The special master also finds, in answer to question 9, that "the entire value of the Peerless spittoon, as a marketable article, under the law, is attributable to the four claims mentioned" (being the four claims above set out). The master further reports that defendants received no profits from the infringement; that Ransom and Randolph, dealers for whose acts defendants are responsible, realized a profit of $1,420.19; and that, while complainant suffered damages from the infringement, the evidence furnished no reasonable basis or data on which to calculate the same.

The master further finds that, if defendants should make their inner bowl stationary and use the water injector as a spiral flushing device, then, according to the overwhelming evidence in this case, such an arrangement of parts "would furnish the defendants' spittoon with a substitute in place of complainant's device that would make the spittoon salable." He further quotes approvingly the opinion of Judge Grosscup, speaking for this court concerning the White dental spittoon in Justi v. Clark, 108 Fed. 659, 47 C. C. A. 565, as follows, viz.: "The White dental spittoon, in existence before 1890, seems to have been the point at which the art, up to the Hurlbut spittoon (July 7, 1896), had reached is climax. The White spittoon was a single stationary bowl, through which arose centrally, nearly to the level of the rim, a vertical rod carrying a water-spraying device that, turning pivotally on suitable bearings, distributed the water over the inner surface of the bowl, subjecting its surface to a spray, such as comes to a lawn from a water sprinkler. It was to a certain degree cleanly and tasteful and went into general use." The opinion goes on to say, further, that in the White spittoon the sprinkler revolves, while the bowl is stationary; in the Hurlbut, it is the bowl that is revoluble.

The master finds, further, that the infringing period herein embraces only the years 1898 and 1899, during which time the S. S. White and Peerless were the only spittoons sold in the ranks of the American Dental Trade Association. It appears that the device of the patent was handled independently at that time. The White spittoon was not covered by a patent. The master finds that the White dental cuspidor, Barker mill flushing device, had been upon the market a number of years preceding the Clark and Peerless, and was in general use by dentists. Clark's and the Peerless devices, and others caused the popularity of the White to wane with the public. "The evidence shows that for many years it was a practical dental spittoon, used extensively in the dental profession, and of undoubted commercial value." He then reports: "The evidence above cited, together with the exhibits of the respective spittoons, drives me to one conclusion only, and that is that the White flushing device of the Barker mill type, at the time heretofore referred to, would afford the defendants a 'known substitute' which would render the defendant's spittoon salable."

After citing various authorities, the master concludes: "* * * I am irresistibly driven to the conclusion that the four claims infringed by defendants constitute the dominant and controlling features in the Peerless spittoon, that the adoption of those features in the Peerless spittoon was the primary cause for its extensive sale, that the improvements covered by complainant's patent constituted the chief value of the Peerless spittoon sold by defendants, and that without them no sales would probably have been made." The master further finds "that with the attachment of the combined gold and gas trap" (defendants' patented device) "the Peerless cuspidor sold for $5 more than the same was sold without it," and holds that the burden was on defendants to show that this feature contributed to the profits made, and also to show the proportion of the sale price belonging to defendants, and further reports that he is unable, under the evidence, to separate or apportion the profits pertaining to the patented feature of defendant's device, and

that, "because of the blending of the lawful with the unlawful, the defendants cannot be allowed any part of the profits derived from the sale of the entire spittoon." Therefore, upon the hearing of all the evidence, he proceeds to make his said replies to the court.

Complainant and defendants thereupon presented to the court their several exceptions to the report, all of which, with the exception of that numbered 4, presented by defendants, were overruled by the court on April 8, 1910. That order provided that defendants' exception 4, which had reference to the master's answer to question 9, and reads as follows, viz.: "The entire value of the Peerless spittoon, as a marketable article, under the law, is attributable to the four claims mentioned under No. 5 of these findings, and which were infringed by defendants in the manufacture and sale of the Peerless spittoons"—be sustained. Afterwards, and on March 11, 1911, the court entered a final decree requiring defendants to pay to complainant the sum of $1 as nominal damages sustained by reason of the infringement, and that the complainant pay costs of accounting to defendants, save the sum of $600 allowed the master, which complainant was ordered to pay to him.

From these orders complainant took an appeal to this court. For errors, he assigns: (1) The order of the court sustaining defendants said exception 4; (2 to 6 and 8 to 13) the action of the court in reference to certain features of the master's manner of accounting; (7) the order of the court setting aside the finding of the master, which awards to complainant on accounting the sum of $1,420.19; (14) the order of the court overruling the complainant's exception to the master's finding that defendants themselves made no profits; (15) the overruling of complainant's exception to the master's report with reference to features used by defendants, not found in claims in suit, also as to a known substitute for defendants' spittoon; (16 to 24) that the court overruled complainant's exceptions to the several findings of the master as to damages; (25) that the costs were taxed against complainant.

Other facts appear in the opinion.

Josiah McRoberts, of Chicago, Ill., for appellant.

Robert S. Taylor and Elwin M. Hulse, both of Ft. Wayne, Ind., for appellees.

Before KOHLSAAT and MACK, Circuit Judges, and SANBORN, District Judge.

KOHLSAAT, Circuit Judge (after stating the facts as above). On the hearing of this cause before the Circuit Court, as here, defendants invoke the first clause of the rule as to accounting laid down in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, both parts of which provide that:

"The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show by equally reliable and satisfactory evidence that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature"

—claiming that the evidence herein furnishes a basis for the application of the first clause of the rule, viz., apportionment between those features of defendants' device which are covered by the patent and those which are open to the defendant. The patent involved in the Garretson Case covered a mop head. The court there further says:

"When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance."

The court finds that in that case there was no attempt to apportion the profits between the patented and the other features, and adds:

"His [patentee's ] evidence went only to show the cost of the whole mop and the price at which it was sold. And of course it could not be pretended that the entire value of the mop head was attributable to the feature patented. So the whole case ended, the rule was not followed, and the decree is therefore affirmed."

The rule was followed in Westinghouse v. N. Y. Air Brake, 140 Fed. 545, 72 C. C. A. 61, with reference to a patent for an improvement in air brakes—a quick-action attachment for triple valves. The latter·was an operative commercial device which was in use many years before the attachment of the quick action device. The court held the profits should have been apportioned, and reversed the case.

In Philp et al. v. Nock, 17 Wall. 462, 21 L. Ed. 679, the rule was applied to a patented ink bottle lid. "When," says the court, "the infringement is confined to a part of the thing sold, the recovery must be limited accordingly."

Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860, involved a patent for improvement in process for making car-wheels. The court says:

"It is the additional advantage the defendant derived from the process— advantage beyond what he had without it—for which he must account."

In that case wheels could be made just as satisfactorily without the process as with it.

This court held in Elgin Wind-Power Pump Company v. Nichols et al., 105 Fed. 780, 45 C. C. A. 49, that where a part of a windmill device, not indispensable to the operative mill, is infringed, the profits to be accounted for must be limited to the use of the patented·part and that a plaintiff has the burden of proof as to such profits and damages. That not having been done, the decree was reversed, with direction to enter a decree for nominal damages only.

On the other hand, complainant claims to have brought his case within the second clause of the rule laid down in Garretson v. Clark, supra, which rule seems to have been followed by the master in making his report herein.

This rule was followed in Crosby Steam Gage & Valve Company v. Consolidated Safety Valve Company, 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809. The case involved a patent for improvement in safety valves for steam boilers or generators. The master ·reported that the entire commercial value of the valves manufactured and sold by defendant was due to the use of the patented device; that no substitute has been suggested·to him; that the peculiar form which infringers used was but the form in which they clothed the device of the patent. The court approved the finding and awarded a decree for all profits, not making any allowance for loss in valves destroyed or exchanged, nor for expenses incurred in making experimental and defective valves, nor for improvements covered by subsequent patents of defendant and used in connection with the infringing device.

In Elizabeth v. Paving Company, 97 U. S. 142, 24 L. Ed. 1000, the court held the Nicholson pavement to be a complete thing con-

sisting of a combination of elements; that the defendants used the whole of it; that if they superadded the Brocklebank addition, they failed to show that such addition contributed to the profits realized; that the burden of proof was on them to do so; and allowed in diminution of profits the royalty of $14,000 paid for the Brocklebank and Trainer patent. The same rule was applied by this court in Orr & Lockett Hardware Company v. Murray, 163 Fed. 54, 89 C. C. A. 492, with reference to a patented store service ladder. There, however, there was no attempt to show that any part of the sale value arose from the use of articles other than the device of the patent. The court holds the burden to be on the infringer to show profits arising from other sources. This rule was followed by this court in Mackie v. Cazier, 157 Fed. 88, 84 C. C. A. 591.

As set out in the statement of facts, the master reports:

"That the four claims infringed by defendants constitute the dominant and controlling features in the Peerless spittoon; that the adoption of those features in the Peerless spittoon, was the primary cause for its extensive sale; that the improvements covered by complainant's patent constituted the chief value of the Peerless spittoon sold by defendants; and that without them no sales would probably have been made."

If the master be correct in holding the spittoon in suit to be a unitary idea and conception, then his further conclusions must prevail. It is true he holds that there are a number of items embraced in the device which are not made parts of the dental spittoon in terms. There is no good reason why the supporting and adjusting elements required in a dental spittoon should not be held to be embraced in the terms, "in a spittoon," "in a dental spittoon," used in the claims. They do not in any event constitute such elements as, under the present circumstances, would warrant the claim that they added to the profits realized on sale of the patented spittoon, and should be taken into account on an accounting.

As to the features which the master finds were added to the device of the patent and which were of value, as, for instance, the spider or bowl supporting attachment found by the master to be worth $10 to defendants' spittoon; the automatic saliva injector said by witness Denny to be worth $10 to defendants' spittoon; the combined gold and water trap valued by the witness Denny at $5, corroborated by the witness Johnson, who says that defendants' spittoon sold for $5 more with the combined gold and gas trap than without it—as to these items, can it be said from the evidence that they added to the profit realized on the sale of defendants' spittoon or gave advantage in selling the same? The burden was on defendants to show how and in what degree they contributed to the marketing of defendants' device, under the facts of this case. It was not enough to give the values of these additions to the Peerless spittoon. The master was entitled to know how much of the profit was attributable to these additions. The evidence of value, it is true, was sufficient to advise the master of the defendants' claim that they contributed to the profits of sales by their own improvements or additions, but the claim was not established by the evidence. In Crosby Valve Company v. Safety

Valve Co., supra, the court, in the absence of specific proof that they enhanced defendants' profits on sales, held them to be part of the clothing with which defendants dressed up complainant's device.

From the record it is apparent that by far the leading and most attractive addition to the spittoon of the patent in suit was the highly ornamental porcelain bowls. The patent called for metal revoluble bowls. The great weight of the evidence is to the effect that it was this feature which forced complainant to resort to glass bowls. Undoubtedly the strength and beauty of this substitution of material and appearance was the main cause of the success of the Peerless spittoon and the greatest contributor to the receipts from the sale of the infringing device, and it is upon this feature that counsel for defendants rests his argument. But can it be said that a change in materials or in decoration of a device is one of those elements which a court may take into consideration in apportioning the profits? Surely not. It is only a form in which the patented spittoon is clothed. The items for which allowance of profit may be made must be of a distinct and independent character. Increase in attractiveness in coloring, material, or form are but matters of taste, and not of substance. We are thus led to hold that, as to the matter of accounting for profits, the defendants have failed to sustain the burden of proof required in such cases.

The master finds that the record fails to present a state of facts which will support a decree for damages. In that we concur. As to the details of the accounting by the master, we are satisfied that substantial justice has been done. True, as claimed by defendants, other methods for arriving at the profits might have been followed, as, for instance, in view of the finding of the master as to the White spittoon, it might have been proper to proceed upon the theory laid down by Judge Drummond in Turrill v. I. C. R. Co. et al., Fed. Cas. No. 14,-272, 24 Fed. Cas. 390, a case involving a machine for repairing rails, where it is said that the proper basis for estimating the profits caused by the infringement is the cost of repairing the rails on the patented machine, as compared with the cost by other known methods. The same rule is laid down in Mowry v. Whitney, supra, and by this court in Columbia Wire Company v. Kokomo Steel & Wire Company, 194 Fed. 108, decided at January, 1911, session.

However, the question is not properly before us, except so far as it bears upon the objection of defendants to the long period of time covered by the accounting, and need not be further considered. The decree for an accounting herein was entered March 14, 1902. The decree disposing of the exceptions to the master's report was entered April 8, 1910. The final decree was entered March 11, 1911. Complainant began taking evidence on July 1, 1902. Thus, approximately, the matter of the accounting was pending nine years. This delay is not satisfactorily accounted for. Nor is it shown to be due to any considerable extent to defendants' acts. In view of the harassments attending upon such investigations, delays of this character are deemed inequitable, and to be discountenanced.

It is the opinion of the court that the decree of the Circuit Court,

sustaining the exception of defendants to the finding of the master with reference to matters set out in defendants' said fourth exception, was error; that that exception should have been overruled, and the master's report approved as presented; that the final decree awarding complainant nominal damages and taxing costs against complainant likewise constituted error; that both of said decrees should be vacated; that the Circuit Court should enter a decree in favor of complainant for said sum of $1,420.19, together with costs and one half of the master's fees, and the other half of master's fees be taxed against complainant. The cause is reversed and remanded, with directions to the Circuit Court to enter a new decree in accordance herewith.