**W. H. MINER, Inc., v. PEERLESS EQUIP-MENT CO.**

Nos. 7313, 7446.

Circuit Court of Appeals, Seventh Circuit.

Oct. 31, 1940.

Rehearing Denied Nov. 27, 1940.

F. Allan Minne and Frank M. Warden, both of Chicago, Ill., and D. P. Wolhaupter, of Washington, D. C., for appellant.

George I. Haight, Henry Fuchs, and Edward A. Haight, all of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from a judgment upon accounting allowing plaintiff damages for infringement previously adjudged in this court in Peerless Equipment Co. v. W. H. Miner, Inc., 7 Cir., 93 F.2d 98, 105. Defendant contends that plaintiff did not establish a basis for recovery of damages; that the District Court failed to charge defendant's profits from sales of infringing devices with the proper proportion of its general selling and administrative expenses; that the court improperly charged defendant with profits upon all gears sold by it in 1936 and 1937; that the court should have charged defendant only with profits due to the presence of Johnson's element in its devices, and, finally, that none of defendant's devices comes within those previously held to infringe.

The matter of accounting was referred to a master in chancery who made a comprehensive report disposing of all controverted issues, which, upon objection, the court modified in certain respects.

We shall discuss only such of the complicated facts involved as are relevant and essential to an understanding of the issues and our disposition thereof.

Defendant seeks a reconsideration of our earlier determination that it has infringed. It insists earnestly that under the proof now in the record, the former adjudication can not stand.

Upon the former appeal, our decision of validity and infringement turned largely upon the convexity disclosed both in plaintiff's patent and in the shoes embraced in defendant's devices then before us. We found that Johnson's precise construction, including the prescribed degree of convexity, produced a desirable result not previously achieved and, under all the evidence, amounted to invention over the prior art. Narrow though the difference between O'Connor and Johnson may have appeared to be, both the District Court and this court concluded that the specific convexity prescribed brought success to Johnson where O'Connor failed and that Johnson's concept in this respect was novel and useful and not disclosed by any prior art. We believed that his conception of a slightly convex shoe friction surface, as disclosed in the patent in suit, was the thing that produced the desired successful result in friction draft gears. This convexity, we

said, was "essential to the desired results of both parties," and was present in defendant's combination.

We are not persuaded by anything now presented that we should recede from this position. The question of desirability and essentiality of convexity was adjudicated and the evidence now submitted by defendant in its own behalf is persuasive of the propriety of this conclusion. Defendant's tests, made subsequent to the prior adjudication, disclosed that its non-infringing gear was of substantially less capacity than its infringing gears. The evidence taken as a whole points to the soundness of our original conclusion that the convexity prescribed by the patent and utilized by defendant was essential to the desired results.

Defendant insists that the District Court erred in approving the allowance of profits upon all sales of all gears by defendant prior to July 19, 1937, and offered evidence tending to show that not all devices manufactured prior to that date infringed. But the evidence disclosed further that defendant made no attempt to segregate upon its books the respective number of sales of infringing devices and non-infringing devices or the profits arising from the sale of those which infringed or those which did not infringe. Rather, it commingled and mixed in one conglomerate all its sales and all profits from its sales of all gears. Defendant, and it alone, was in position to maintain a record segregating infringing and non-infringing devices and the profits or loss resulting from the sale of each. This it did not do prior to July, 1937. Plaintiff was wholly unable to produce evidence in this respect, for the reason that all gears sold, after use for a short time by railroad purchasers, lost the element infringed, namely: the essential convexity of plaintiff's invention. Indeed, this change in use was essentially incident to the desired results of the patentee. Consequently, plaintiff could not, by examining the devices sold by defendant and in use on railroad gears, ascertain to any degree of certainty the extent of sales of infringing devices. True, this court determined only that the devices produced at the trial infringed. Upon reference to the master the extent or quantum of such infringement was for him and in making such determination it was incumbent up-

on him to ascertain, if possible, what part of the profit realized by defendant arose from sale of infringing devices and how much, if any, from non-infringing gears. Plaintiff was unable to supply the evidence, that having been within the power of defendant alone, and defendant, having failed to furnish any reasonable or proper basis for division or segregation and having commingled the profits of all devices sold, must account as trustee for all the profits resulting. We deem the correct principle to be that when the defendant commingled profits which it had made as an infringer with those it had made otherwise and there is no standard or criterion by means of which the master can separate them, the infringer must subject itself to the recovery of the whole. It is, in law, a trustee and profits having been shown to have reached its hands, if it fails to segregate and protect the trust fund, it must turn over all. It follows that the master and the District Court were correct in holding defendant liable for all profits realized by it during the infringing period ending July 19, 1937.

Defendant seeks to rebut this trust liability by evidence that only a part of the devices then on hand infringed and argues that the same relative proportion of non-infringing devices must have been manufactured previously as the same processes were followed. Unfortunately, however, even though this were true, the commingling of profits and the failure to keep records or supply evidence that would disclose what proportion of profits arose from the infringing devices and what proportion, if any, from non-infringing gears, create an unavoidable liability.

Following the decree of the District Court adjudging defendant guilty of infringement and pending appeal to this court, on July 19, 1937, defendant began inspection of all shoes manufactured. Testing was in charge of one Hauskins, who was experienced in his profession. He testified that from the time he began his inspection until December 2, 1937, he examined every shoe and rejected any and all having a convexity of five-thousandths of an inch or more, using gauges which he produced before the master and demonstrating before that official the manner in which his work was done. On December 2, he was succeeded by another experienced inspector, Hansen, who checked several thousand shoes then in stock, a

greater portion of which it is apparent from the record, Hauskins had previously tested. He, too, demonstrated his method before the master and testified that all shoes with a convexity of five-thousandths of an inch or more were rejected. The master, seeing and hearing the witnesses, observing their methods, found that defendant, after July 19, 1937 rejected all gears with shoes having a convexity in excess of five-thousandths of an inch and shipped no such gears. He believed Hauskins was corroborated by the inspection made by Hansen.

The court upon review of the master's report found that Hauskins' testimony was not satisfactory because, (1), of careless methods in keeping records; (2), he testified that he did more work than was humanly possible, and (3), the gauges used were not adapted to dependable determination of the existence or non-existence of infringing convexity. The court found further that Hansen in no way corroborated Hauskins; that his inspection, too, was inefficient for the purposes intended and that defendant had continued to infringe after July 19, until December 31, 1937, and entered a decree for all profits from all gears sold during that period.

Obviously whether defendant infringed after the entry of the decree which we affirmed on appeal was not before us. On that review there was and could have been no adjudication as to that. It was the obligation of the master to determine whether the acts of defendant subsequent to the entry of the decree amounted to infringement. Irrespective of the fact that the same process of manufacture may have been followed and the same dies used as previously and the presumption that the adjudicated infringement continued, it does not follow that the evidence supports a finding of continued infringement. There was no evidence of sale or use of any infringing shoe after the entry of the decree. It is clear from the record that not all shoes produced by defendant prior to the entry of the decree infringed and we have held the defendant liable because of its commingling a trust estate arising from infringement with other funds received from non-infringing devices, making it impossible to ascertain how much of the sales profit was trust funds. But it does not follow that defendant is in the same situation subsequent to July 19, 1937, for upon that date defendant began inspection and after that, according to the testimony of Hansen and Hauskins, no infringing shoe was sold or shipped by defendant. The master saw the method of inspection demonstrated. He saw used the gauges employed; he observed the inspectors upon the witness stand and had the best opportunity of any of us to judge of their credibility under all the facts and circumstances appearing before him. His finding based upon and supported by credible evidence should not be disturbed. It may be that Hauskins' records were not perfect. It may be that his note book on its face indicated more work than could reasonably have been done on certain days, but he testified that his memoranda indicated periods rather than days. We do not believe that the District Court was justified in its conclusion that the master erred in his finding in this respect. The record rather is convincing that upon the adjudication that it was infringing, defendant took reasonable steps to keep records which it had not kept before and employed effective means to prevent use of the infringing element. In the absence of any positive or convincing evidence of sales of infringing devices subsequent to July 19, 1937, we conclude that the District Court erred in overruling the master's finding in this respect.

■ Defendant insists that it was error to allow to plaintiff as damages all its profits arising from sale of infringing devices and asserts that the court should have apportioned to plaintiff only such part of the profits as resulted from including the essential improvement element of Johnson in defendant's gear. The Supreme Court has held in Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U.S. 641, 35 S.Ct. 221, 59 L.Ed. 398, that in so far as profits of infringing sales are attributable to the patented improvement, they belong to plaintiff and in so far as they spring from other parts or features, they belong to defendant, and that if the profits necessarily are commingled it is essential that they be separated or apportioned between what is covered by the patent and what is not covered by it, if possible. The court further held plaintiff was required to take the initiative in presenting evidence looking toward apportionment. However, in Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U.S. 604, 32 S.Ct. 691, 694, 56 L.Ed. 1222, 41 L.R.

654

A.,N.S., 653, the court had occasion to consider substantially the specific question here presented, using this language: "Where the infringer has sold or used a patented article, the plaintiff is entitled to recover all of the profits. Where a patent, though using old elements, gives the entire value to the combination, the plaintiff is entitled to recover all the profits. Hurlbut v. Schillinger, 130 U.S. [456], 472, 9 S.Ct. 584, 32 L.Ed. [1011], 1016. Where profits are made by the use of an article patented as an entirety, the infringer is liable for all the profits 'unless he can show—and the burden is on him to show—that a portion of them is the result of some other thing used by him.' Elizabeth v. American Nicholson Pav. Co., 97 U.S. [126], 127, 24 L.Ed. [1000], 1002. But there are many cases in which the plaintiff's patent is only a part of the machine and creates only a part of the profits. His invention may have been used in combination with valuable improvements made, or other patents appropriated by the infringer, and each may have jointly, but unequally, contributed to the profits. In such case, if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains. He must therefore 'give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.' Garretson v. Clark, 111 U.S. [120], 121, 4 S.Ct. 291, 28 L. Ed. 371."

The court added: "But when a case of confusion does appear,—when it is impossible to make a mathematical or approximate apportionment,—then, from the very necessity of the case, one party or the other must secure the entire fund. It must be kept by the infringer or it must be awarded by law to the patentee. On established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong. The fact that he may lose something of his own is a misfortune which he has brought upon himself; and if, as argued, the fund may have been made by the use of other patents also, for which he may be liable in another case, it is again a misfortune which he has brought upon himself and an instance of a double wrong causing double liability. He cannot appeal to a court of conscience to cast the loss upon an innocent patentee and by judicial decree repeal the provision of Rev.Stat. § 4921, U.S.Comp.Stat.1901, p. 3395 [35 U. S.C.A. § 70], which declares that, in case of infringement, the complainant shall be entitled to recover the 'profits to be accounted for by the defendant.'"

In the present case the essential convexity of Johnson's device was utilized in gears produced by defendant. All other elements of defendant's product were old. The inclusion of convexity was not the addition of an attachment but embraced in manufacture an essential element of Johnson's successful invention. This situation is such that it is impossible to make a mathematical or even an approximate apportionment of the resulting profits. Consequently under established principles of equity and the plainest principles of justice, as the court said in the Westinghouse case, the infringer cannot take advantage of its own wrong. It being impractical or impossible for plaintiff to apportion the profits between what is new and what is old, defendant, an infringer, must either make the apportionment or yield up all profits, unless such a decree would be shockingly unjust, in which event the plaintiff would be relegated to a royalty. Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 87 F.2d 35, 39; Farmers' Handy Wagon Co. v. Beaver Silo & Box Mfg. Co., 7 Cir., 259 F. 270, 271; Clark v. Johnson, 7 Cir., 199 F. 116, 121, 122.

Defendant complains that both the master and the District Court improperly allocated to branches of defendant's business other than that relating to gears an unreasonable and exorbitant amount of its overhead expense. Defendant was engaged in the business of selling draft gears, batteries and journal boxes. Each of the two latter was non-infringing. From income arising from the sale of gears, the District Court deducted all expense allocated on defendant's books of account to gears, including all sums paid for manufacture, freight, allowances, royalties and commissions. From the income re-

maining, defendant claimed additional deduction for a proportionate amount of the general overhead expenses of the business, including executive and administrative salaries, traveling and office expenses, insurance, rent, taxes and interest. Defendant kept no record in which this general overhead was allocated to the respective portions of its business. Consequently it became incumbent upon the master and, upon objection to his report, upon the court to determine what was a reasonable and proper apportionment of the general overhead expense to the infringing and non-infringing branches of the business. The parties agreed that in 1936, 61 per cent, and in 1937, 65 per cent of defendant's net income before overhead deduction represented the income from gear earnings and the master, in view of all the circumstances, concluded that this was a fair and equitable basis for the division of overhead likewise and applied these percentages to all items of general expense which he approved as deductible, except interest on capital invested, which he allocated to gears, and federal income tax, which, because of a stipulation of the parties, was allocated on a different basis. The District Court approved this basis and method of allocation of overhead except to hold that before any proper division could be made, the true selling expense of the non-infringing branches of defendant's business should be excluded, for the reason that while the commissions to salesmen who sold gears were shown on defendant's books and charged to gears, similar compensation to salesmen of non-infringing branches, by way of salary, was included in the general overhead. In other words, the gear salesmen's commissions, rent and expenses had been deducted from the gross income from gears whereas the compensation of the representatives of the non-infringing branches was included in the mingled overhead items. Consequently, and, we think, properly, the court allocated the true selling expense of the non-infringing branches to them. Unfortunately the records did not disclose the amount thereof, but the court found that at least 30 per cent of the general overhead was in fact true selling expense of the non-infringing business. Therefore, before allocating the general overhead between the different branches, the court ordered deducted therefrom, 30 per cent of the overhead. Of this we approve.

Defendant insists that the court should have followed the testimony of its witness Frystak who testified at considerable length as to the duties performed by the officers and employees and to his opinion of what would be a fair allocation. The master, however, commented that his testimony was largely hearsay and, therefore, inadmissible; that it was evident he had no personal knowledge of the activities of the various employees; that his allocations were based on what employees had told him and upon facts of which he could have had no personal knowledge. The record supports the master's conclusion in this respect and the decree of the court approving same. Furthermore, the master rightfully suggested that the failure of available officers who had personal knowledge of the facts to testify raised an inference unfavorable to defendant's attempted allocation.

Defendant controverts also the correctness of the District Court's allowance of interest upon invested capital. Defendant's net worth was stipulated by the parties at $29,181.79 in 1936 and $35,257.35 in 1937. The District Court held that defendant was entitled to interest on this net worth only, overruling the master who included in the amount moneys borrowed by defendant from Poor & Company, who owned all of the stock of defendant and who received at the end of each of the years all of the net profits and then loaned them to defendant for use in the business. We see no reasonable basis for holding that these advancements should be included as invested capital. The net worth of the company was the remainder after deduction of liabilities from assets. If the profits had been left in the business, the assets would thereby have been increased but having been distributed to stockholders, the invested capital was thereby reduced by the amount thus distributed and the fact that the money was thereafter borrowed did not add anything to invested capital.

The court eliminated from deductions all bonuses paid by defendant in the year 1936, one-half of which had been recommended for allowance by the master. Defendant insists that these bonuses

should be deducted in determining defendant's net profits.

The bonuses were paid for 1936 pursuant to contracts made therefor. In January of that year, the corporation adopted a resolution allowing to the president and vice-president five per cent of the net profits at the end of the year, after deduction of all income and other taxes. A contract was also made with a special agent of the company on January 2, 1936, to pay him for compensation for the year 1936 ten per cent of the net income of the corporation, after deduction of income and other taxes. At the end of the year the bonuses were computed and paid. None of the recipients was a stockholder of the corporation. Defendant insists that having been made pursuant to contracts creating the liability prior to the rendering of the services, the payments were purely compensation and not a division of profits. With this contention we agree. Where bonuses are outright gifts which do not have in them the element of compensation they are not deductible in computing income, but if such payments are made in good faith, in pursuance of contracts entered into, as additional compensation for services actually rendered by the employee, pursuant to such contracts, they should be deducted. Obviously they must not exceed a reasonable compensation and any amount in excess of a reasonable salary is not deductible. It matters not at all that the payments took the form of a share of net income. Regardless of the method of determination, as the company had contracted to pay bonuses as compensation and the services had actually been rendered in reliance upon contracts to pay therefor and the amounts were not excessive, the payments were allowable as deductions. In this case there was no evidence that the amounts were unreasonable. We know of no reason in law why the payments should not be considered allowable expense and stamped as deductible. We believe that cases cited will upon analysis accord with our views.

We conclude that the method of accounting as approved by the District Court and the conclusions thereto are correct except in the particulars indicated in this opinion.

The judgment of the District Court in No. 7313 will be reversed in so far as inconsistent with the announcements herein contained with directions to make the accounting in accord with those expressions; in all other respects, it will be affirmed.

In No. 7446, the order of the District Court denying defendant's motion to vacate the decree of May 25, 1937 is affirmed.

Upon Petition for Rehearing.

LINDLEY, District Judge.

It was the intent of the opinion rendered that the manner of accounting for the first half of the year 1937, that is, up to July 19, 1937, so far as allocation of expenses is concerned, should be, except as indicated otherwise in the opinion, as recommended by the master.

The petition for rehearing is overruled.