**William T. GRAHAM and Graham-Hoeme Plow Co., Inc., Appellants,**

v.

**JEOFFROY MFG., Inc., Roy Jeoffroy and Ray L. Jeoffroy, Appellees.**

No. 16392.

United States Court of Appeals
Fifth Circuit.

March 12, 1958.

Rehearing Denied May 3, 1958.

Clayton Heare, Amarillo, Tex., Claude A. Fishburn, Orville O. Gold, Kansas City, Mo., for appellants.

S. Thomas Morris, Amarillo, Tex., Gibson, Ochsner, Harlan, Kinney &

Morris, Amarillo, Tex., of counsel, for appellees.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and HANNAY, District Judge.

TUTTLE, Circuit Judge.

This is an appeal from findings and a judgment of the trial court entered August 3, 1956, assessing damages against the defendants below, the appellees here, for the infringement of appellants' patent. The validity of the patent and the fact of infringement have already been determined by the trial court and affirmed by us in Jeoffroy Mfg., Inc. v. Graham, 5 Cir., 206 F.2d 772. In brief, appellants say that on the unchallenged findings of fact the trial court erred in not making its award for damages substantially higher than the $35,000 judgment. The figure was stated by the court to be compensatory damages without any increase under the power to assess treble damages or to award attorneys' fees.

The controlling statutory provisions in effect during the accounting period of infringement are:

"§ 67. Damages for the infringement of any patent may be recovered by action on the case, in the name of the party interested, either as patentee, assignee, or grantee. And whenever in any such action a verdict is rendered for the plaintiff, the court may enter judgment thereon for any sum above the amount found by the verdict as the actual damages sustained, according to the circumstances of the case, not exceeding three times the amount of such verdict, together with the costs."

35 U.S.C.A. § 67, Appendix II.

"§ 70. * * * upon a judgment being rendered in any case for an infringement the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reason-

able royalty therefor, together with such costs, and interest, as may be fixed by the court. The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case * * *

"The court shall assess said damages, or cause the same to be assessed, under its direction and shall have the same power to increase the assessed damages, in its discretion, as is given to increase the damages found by verdicts in actions in the nature of actions of trespass upon the case: * * *"

35 U.S.C.A. § 70, Appendix II.

On July 19, 1952, the statute (Title 35 U.S.C.A. Section 284) was changed to read that upon finding for the claimant, the Court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. It further provided that the court may increase the damages up to three times the amount found or assessed.

Title 35 U.S.C.A. Section 285, provides that the Court in exceptional cases may award a reasonable attorneys' fee to the prevailing party.

The parties agree that compensatory damages, as provided for in the statute, may comprehend the profits of the infringer and lost sales and expenses of the patentee if proved, but that neither element of damage must in all events be found by the court. Evidence of each of these may be considered by the court in fixing its award. In other words, the profits made by the infringer from his improper use of the infringing device may be the measure of the damages suffered, even though the statute does not prescribe that profits are to be recovered as such.

Also, it must be conceded that the finding of damages is a finding of fact and " * * * findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the oppor-

tunity of the trial court to judge of the credibility of the witnesses * * * " F.R.C.P. Rule 52(a), 28 U.S.C.A.

As to the refusal to grant an increase under the power of the court to treble the damages and to award attorneys' fees, appellant is also met with the very formidable, indeed almost insuperable, burden of showing an abuse of discretion by the trial court imposed by the statute which provides not that the court *must* but that it *"may"* make such awards.

Substantially the whole of the trial court's findings as to damages related to an ascertainment of the true amount of profits earned by the defendants from the sale of the infringing article. It is quite apparent from the computations made by the trial judge, who did not refer the matter of damages to a master, that the final judgment entered by him was based almost entirely on the figure which he considered to represent the profits made by defendants from the sale of the infringing article. Our review of his conclusion, therefore, should include a review of his calculations which are based on figures supplied by the defendants about which there is no genuine dispute. If we find, as we do, that substantial errors entered into his calculations, then, without doing violence to the clearly erroneous doctrine, the final figure must be found to have been arrived at by legally incorrect methods and it must be set aside. This is so, not because the trial court is bound to find as damages the exact sum correctly determined to be the profits of the infringers, but to insure as near as may be that in using the profits as a measuring rod no mathematical or accounting mistakes have been made, no legally untenable positions taken.

Before reviewing the computations it is necessary to consider appellant's contention that, since the account-

ing practice of the appellees did not permit a completely accurate breakdown between the infringing and the non-infringing operations of appellees the court should consider the entire operating profits of the infringers as the measuring rod. Relying upon Westinghouse Electric & Manufacturing Co. v. Wagner Electric & Mfg. Co., 225 U.S. 604, 32 S. Ct. 691, 56 L.Ed. 1222; Van Kannel Revolving Door Co. v. Uhrich, 8 Cir., 297 F. 363, and W. H. Miner, Inc. v. Peerless Equipment Co., 7 Cir., 115 F.2d 650, appellant contends that the failure of appellees to maintain a cost accounting system or otherwise to separate the infringing operations from the non-fringing demands the inclusion of the appellees' entire profit as its profit from infringement. Appellees answer that this rule does not apply if the court can make a reasonable approximation of the separate categories. Here the finding of the trial court that the profits from the infringing activities can be reasonably measured from the records is not so clearly erroneous as to require an application of the more stringent rule. Indeed we do not think it is erroneous at all.

The total sales of appellees during the accounting period amounted to $1,189,-796.16. Of this amount sales of 1,863 infringing plows [1] accounted for $542,-604.31, or 45.6048%.

The total profits of the entire business were $68,287.25, as shown on the books of the defendant corporation. The court found that $28,518.48 of the legal expense, $21,714.33 of Ray L. Jeoffroy's salary, and several small items, all totalling $54,489.39, should be specifically allocated to the cost of defending the infringing operation and should not be allowed as an operating expense in arriving at the corporation's net profits. This figure was then added to the $68,287.25 and a corrected net profit of $122,776.64 was arrived at. The court then applied

---

1. The patent relates to a device attached to a multiple-bladed plow which causes the ground-working tool (the end of the plow) to give way and rise over obstructions such as rocks with which it makes contact while being drawn across the ground being plowed.

the factor of 45.6048% to this and obtained a figure of $55,997.04, as defendants' net profits "on spring clamp plows and spring clamps and parts" during the accounting period. To this figure the court applied an additional percentage factor of 60%, being the part of the sales price of the whole plow which the court attributed to the infringing spring clamp itself.[2] Without making the mathematical calculation that would produce $33,595.22, the court fixed damages at $35,000.

■■■■ We agree with appellants that there are two basic errors in the treatment given by the trial court to the items used to compute the company's net profit and that part of the profit attributable to the infringing sales. The first relates to the salaries of the two Jeoffroys, the father, Roy, and the son, Ray L. They were both found by the trial court to be guilty of infringement along with their corporation. This, of course, followed because it was, in this respect, their alter ego. Since what the court was here attempting to reconstruct was the profits from the infringement, and since the Jeoffroys, father and son, were found to have earned salaries some 45% of which came to them as a result of the infringing activities, the amount of these "infringing" salaries must be added to the infringing profits of the company in order to make a complete picture of the profits resulting to the company from the

infringing acts by the defendants as a group. We hold, therefore, that a correct picture of infringing profits must include the entire $21,714.33 salary of Ray L. Jeoffroy disallowed, not 45% of it, and must in the same way include $21,714.33 of Roy's, which the court did not include at all because, although the president of the company, he was the less active of the two. He nevertheless has been cast as an infringer and his profits from his activities as such must also be included.

The other error arises from the fact that the trial court, after having allocated legal and other expenses specifically to the cost of defending the infringing effort, nevertheless allowed some 55% of them still to be deducted from the company's income to arrive at its true profits. This is the effect from adding the allocated unallowable expenditures to the company's total profit of $68,287.25, and then taking 45% of that figure to show the defendants' net profits on the infringing sales. The effect of this was to permit the company to retain as part of its profits, not accounted for to the patentee, 55% of the amount which the court had found was entirely spent in defending it in the infringement suit. This is not permissible in the computation of profits.

· The true picture of the infringement profits computed in the light of the above principles, would produce the following:

| | |
|---|---|
| Total corporation net profit per books, | $ 68,287.35 |
| Percentage of sales representing infringing articles, | 45.6048% |
| Infringing profits per books, | $ 31,142.26 |
| Legal expenses specifically allocated to infringement litigation, | 32,775.06 |
| Salaries (45.6048% of total) | |
| Ray L. Jeoffroy, | 21,714.33 |
| Roy Jeoffroy, | 21,714.33 |
| | $107,345.98 |

2. We shall discuss the propriety of this adjustment later, but we here discuss only the treatment of the items that constitute the company's entire net profit and the net profit from sale of the infringing plows.

○

This figure contrasts with $55,992.04 resulting from the court's computations and treatment of Roy Jeoffroy's salary.

Appellant next challenges the trial court's reduction of the profit figure by applying a 60% factor to it. It is not disputed that the defendants sold 1,863 plows equipped with the infringing device. Nor is there any real dispute that appellants would have sold substantially all of these plows but for the actions of the appellees. The court found:

"The plaintiff was equipped and had the material capable of manufacturing the 1,863 plows manufactured and sold by defendants. There is some evidence that there was a Glencoe deep cultivator on the market but the proof does not show definitely whether or how many of said Glencoe cultivators were marketed in the rocky areas during the accounting period. I, therefore, find but for the intervention of defendants the plaintiffs would have supplied the market for about all of the 1,863 spring clamp plows * * *."

These plows were particularly valuable in certain rocky areas of the northern middle west. As to this the court found:

" * * * evidently the infringing spring clamp used by the defendants as elements on the 1,863 plows were the dominant motivation of the buyers in the sale of such plows.

"The testimony is plain that the chisel plow such as manufactured and marketed by both the plaintiffs and the defendants [without the patented spring clamp] are practically unsaleable in rocky territory without the spring clamp element. Defendants at best would have been able to sell *no more than a negligible number of the 1,863 plows in question without a spring clamp device attached.* In other words some such device was virtually indispensable as a prerequisite for the sale of said plows in the localities where same were marketed. There is some evidence that the plows increased the yield of crops to a large percentage and even made some of the farm land tillable whereas it had not been tillable with the old type one way or mold board type plows. However, the plows are just about as serviceable without the spring clamp in most places in the mid-continent part of the country and the spring clamps primarily meet a particularly acute need limited to rocky farm land. Any one of the purchasers buying these 1,863 spring clamp plows by moving one hundred miles or even less might well locate on a farm where the plows would be just as good without the spring clamp attachment.

"It clearly seems too much to say that the spring clamps represented the whole sales appeal to the purchasers of the 1,863 plows in question but *doubtless very few such purchasers would have bought the other value of the whole plow if they could not have gotten the vital benefit of spring clamps or some equivalent device.* Attention is focused on the very narrow factor of a special market requirement, a real prerequisite. That imperative angle imparted magnified weight to the demand for spring clamps as a factor in the sale of these plows, but I still do not think that all of the attraction can be credited to that one feature. In balancing the competing considerations I have concluded that the net profits accruing from the sale of the 1,863 spring clamp plows should be attributed 60% to the infringing spring clamp and 40% to the plow otherwise." (Emphasis added.)

These findings as to the motivating cause of the purchase of these infringing plows cause the appellant to invoke the rule announced by the Supreme Court in Westinghouse Electric & Manufacturing Co. v. Wagner Electric & Mfg. Co., 225 U.S. 604, 32 S.Ct. 691, 694, 56 L.Ed. 1222:

"Where profits are made by the use of an article patented as an entirety, the infringer is liable for all the profits 'unless he can show—and the burden is on him to show—that a portion of them is the result of some other thing used by him.' "

█ Appellees claim the facts here make the case more similar to the other landmark case of Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U.S. 641, 642, 35 S.Ct. 221, 59 L.Ed. 398. We think the degree to which the sale of the infringing plows was attributable to appellants' patented device is, after all, a question of fact and, although some of the trial court's findings of fact come close to negativing its ultimate finding, we cannot say the finding that only 60% of the profit is attributable to the infringement is clearly erroneous.

Applying this 60% factor to the segregated profits produces a result of $64,-407.59, which, we find, is the true profit derived by the three defendants from the manufacture and sale of the infringing device.

Appellants strongly urge that this Court should reverse the judgment of the trial court for not increasing the compensatory damages and refusing to allow attorneys' fees under the discretion given in the statute, *supra*. The contention is made that appellees knowingly copied plaintiffs' device and that they wilfully entered into the manufacture and sale of the infringing articles, knowing that the patents were valid and were being infringed.

█ The law placing, as it does, the discretion in the trial court to determine whether the compensatory damages shall be increased in the nature of a penalty and whether the case is an exceptional one so that attorneys' fees should be allowed, appellate courts ought not to and will not interfere with the exercise of such discretion. Indeed, they may not do so unless there is such a clear abuse as to show that discretion was not exercised, or unless it is plain that the trial court's decision is based on an er-

roneous concept of law. This is not such a case.

We find no error in the treatment by the trial court of the reasonable royalty question, such royalty being under the statute only the measure of the minimum amount the court is permitted to find in such a case. Nor do we find error in the court's treatment of the item of interest and costs or in dealing with appellants' contention as to the item of lost sales.

The judgment is reformed to award a recovery of $64,407.59, and, as reformed, it is affirmed with costs to appellants.