Karl ZYSSET and New-Nel Kitchen Products Company, Plaintiffs-Appellants, and Cross Appellees,

v.

POPEIL BROTHERS, INC., Defendant-Appellee, and Cross Appellant.

Karl ZYSSET et al., Plaintiffs-Appellees,

v.

POPEIL BROTHERS, INC., Defendant-Appellant.

Nos. 13939, 13940, 14007.

United States Court of Appeals Seventh Circuit.

June 3, 1963.

Rehearing Denied in Nos. 13939 and 13940 July 17, 1963, en banc.

---

Albin C. Ahlberg, for Karl Zysset.

Warren C. Horton, Chicago, Ill., Marshall W. Sutker, Chicago, Ill., for New-Nel Kitchen Products Co.

Dugald S. McDougall, George B. Christensen, Will Freeman, D. D. Allegretti, Chicago, Ill. (Ooms, McDougall & Hersh, Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel), for Popeil Brothers, Inc.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

Karl Zysett, patentee, and New-Nel Kitchen Products Company, his licensee, sued Popeil Brothers, Inc., for infringement of Zysset Patent No. 2,782,826. A trial restricted to the issues of validity of the patent and its infringement resulted in a judgment for the plaintiffs entered in October 1958. Defendant's appeals from that judgment, and from the District Court's denial of a subsequent motion for relief therefrom on the basis of newly discovered evidence, were considered by this Court in Zysset v. Popeil Brothers, Inc., 7 Cir., 276 F.2d 354, cert. den., 364 U.S. 826, 81 S.Ct. 62, 5 L.Ed.2d 54. A detailed description of the Zysset device, a vegetable shredder or chopper, and its manner of operation, together with the claims of the patent, are set forth in that opinion (276 F.2d pp. 355–356) and need not be repeated here. This

Court affirmed,[1] except as to claim 1, the judgment order of the District Court finding the Zysset patent to be valid and infringed and enjoining the defendant from further infringement.

On the subsequent trial of the issue of plaintiffs' damages, and of the defendant's counterclaim for breach of contract and unfair competition, the District Court awarded judgment for the plaintiffs for $182,325.38, representing $126,-103.12 for damages and $56,222.26 for plaintiffs' attorneys' fees and disbursements, and for costs. The judgment was entered July 13, 1962.

Prior to the trial of the issue of plaintiffs' damages the defendant on December 29, 1960, filed a motion [2] seeking that the accounting which the District Court had ordered be terminated and that a final judgment be entered for nominal damages. This motion was grounded on the contention that claim 2, the remaining claim of the patent in suit, lacked novelty and patentable invention over Wilson & McCallay Patent No. 207,146, presented as a newly discovered prior-art reference. The motion was heard on its merits and denied.

Both plaintiffs and defendant appealed from the July 13, 1962 judgment. Subsequently, on November 5, 1962, the defendant filed in the District Court a second motion for relief from judgment on the basis of certain Swiss patents presented as newly discovered evidence of prior art invalidating the Zysset patent.[3] The motion was denied.

Plaintiffs on their appeal (No. 13939) contend that the damages awarded are inadequate. Defendant on its cross-appeal (No. 13940) and on its appeal (No. 14007) contends that the court erred in denying the defendant's respective mo-

---

1. Opinion filed February 11, 1960; modified and rehearing denied April 14, 1960; mandate issued May 18, 1960.

2. The motion although captioned "Motion For Mitigation Of Damages Or For Application Of The Rule De Minimus Non Curat Lex" was on defendant's motion treated as a motion under Rule 60(b) (2), Federal Rules of Civil Procedure (28 U.S.

C.A.), for relief from the October 1958 judgment of validity and infringement.

3. The motion prayed for issuance of a certificate to this Court requesting a remand of the cause pursuant to the procedure outlined in Binks Mfg. Co. v. Ransburg Electro-Coating Corp., 7 Cir., 281 F.2d 252, 260–261.

tions for relief from judgment on the basis of newly discovered evidence—erred in not holding claim 2 of the Zysset patent invalid—and, in any event, that the court erred in awarding attorneys' fees and disbursements, and costs, to plaintiffs.

Contrary to the interpretation defendant seeks to place on Zysset v. Popeil Brothers, Inc., supra, upon which faulty premise defendant bases the relevancy of its newly cited prior-art references, it is abundantly clear that it is the single-piece sinuous blade in combination with the sinuous slot of the wiper cup, the housing, indexing feature and torsion clutch, all of which are included in claim 2, which was held to constitute patentable invention. It is the *combination* which was held valid and infringed—not any particular element thereof, *per se*. In Zysset v. Popeil Brothers, Inc., it was pointed out (276 F.2d 354 at 357) that the sinuosity of the blade and slot in the wiper cup was an important element in the "combination claimed in the patent" and that:

> "It eliminated the problem of particles wedging between multiple blades without loss of the advantage of the additional chopping surfaces, and in *combination* with the indexing feature produced a result beyond that of mere mechanical improvement over existing art. A novel idea was incorporated. While it took mechanical skill to adapt the idea to practical use, and although the mechanics employed may have been obvious, the idea was not. It possessed the 'impalpable something which distinguishes invention from simple mechanical skill'. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 129, 95 L.Ed. 162." (Emphasis supplied.)

██ ██ We deem it unnecessary for the purposes of this case to consider or pass upon the propriety of the District Court's action in entertaining the defendant's motions of December 29, 1960 and November 5, 1962, either from the standpoint of their timeliness under the limitations of Rule 60(b),[4] or in view of the previous mandate of this Court affirming the validity of the patent claim the motions attack anew. Apart from such considerations we are not persuaded by defendant's contentions that its failure to produce the newly cited prior-art references at the 1958 trial on the issue of validity was not due to lack of diligence on its part. But more important we perceive nothing in this newly tendered prior art which requires a change in the original conclusions of law and judgment with respect to the validity of claim 2 of Zysset Patent No. 2,782,826.

The newly cited prior-art reference relied upon in connection with defendant's December 29, 1960, motion is Wilson & McCallay Patent No. 207,146 covering a device for use in cutting plug tobacco during the process of manufacture, the object being to cut pieces of plug tobacco in a zigzag or curved form to facilitate the adherence of the sections one to another when subjected to pressure in the finishing process and to enable consumers to identify the manufacturer by the shape of the pieces. Curved or zigzag knives were employed in the cutter-head, and between them correspondingly-formed clearing plates. After a cut is made the pieces are separately covered with a wrapper and then brought together under pressure to form a single plug which can be broken apart for the retail trade. Except for disclosing a sinuous type of knife blade Wilson & McCallay is no better a prior-art reference than those originally cited, and considered and rejected, in Zysset v. Popeil Brothers, Inc., supra.[5] Its disclosure of a sinuous blade and a clearing plate is not an anticipation of the *combination* of Zysset. Nor is Wilson & McCallay addressed to either the purpose or problems of Zysset. It

---

4. Cf. Marconi Wireless Telegraph Co. v. United States, 320 U.S. 1, 47–48, 63 S.Ct. 1393, 87 L.Ed. 1731.

5. See 276 F.2d 354, pp. 356–357, for prior-art references considered and rejected.

uses a plurality of knives in a single cutting operation to obtain pieces of desired shape so that they will adhere when re-united and when eventually re-separated will serve to identify the product. It is not a shredder or chopper using a single sinuous blade in repeated cutting operations, each from a different position than the previous cutting stroke, and incorporating the combination of features which endowed Zysset with the quality of invention over the separate elements employed.

The newly cited prior-art references now relied upon by defendant in connection with its November 5, 1962, motion consist of Galant, Swiss Patent No. 261,-313 and Hofmann, Swiss Patent No. 265,-458.[6] Neither of these discloses or anticipates the *combination* of Zysset. Galant, a fruit and vegetable cutter, and Hofmann, an onion chopper, each disclose a wiper or brush-off plate through which operate multiple straight blades set at an angle to each other. Except for disclosure of a wiper they are no better prior-art references than those originally relied upon.

Defendant's contentions with respect to the disclosures of Wilson & McCallay, Galant and Hofmann are predicated upon its faulty assumption that it is one element, or something less than the whole of the combined elements, which is relied upon in Zysset to constitute patentable invention. And such is not the case.

On the question of defendant's diligence in the discovery of these belated references it is noted that all three of the newly cited patents are shown by the record to be classified, and copies thereof physically present, in the same Patent Office classification, Class 146, Sub-class 160, as Zysset Patent No. 2,782,826. Defendant attempts to negate lack of diligence on its part in connection with its failure to originally cite Galant and Hofmann by reference to an affidavit by a Washington, D. C., patent attorney that although Galant was received in the Patent Office in 1949 and Hofmann in 1950, the affiant, in 1962, could find no reference in the routing records of the Patent Office Library to show that they had been referred to Division 5 which issued the patent in suit although they were then in the files of such Division. But the lack of a record of such routing does not serve to establish that these two Swiss patents were not available in Class 146, Subclass 160 and that a proper search prior to the 1958 trial on the issue of validity would not have revealed them. It does not serve to excuse what on its face shows lack of diligence on defendant's part in so far as discovery of this particular, although worthless, prior art is concerned. Defendant offers no valid reason to excuse its apparent lack of diligence with respect to the discovery of Wilson & Mc-Callay, similarly a reference of no import. As to Wilson & McCallay, defendant appears to rely on the faulty premise that it was not until the opinion of this Court in Zysset v. Popeil Brothers, Inc., 7 Cir., 276 F.2d 354, that Wilson & Mc-Callay became of significance. But such argument falls with the premise, heretofore demonstrated unsound, upon which it is based.

We perceive no error in the District Court's denial of defendant's motions for relief from judgment. We proceed to consideration of the issues presented in connection with the damages awarded and the allowance of attorneys' fees and costs.

A statement of account filed by the defendant pursuant to order of the District Court discloses that it manufactured and sold 3,152,578 infringing food choppers. The dollar amount of such sales is stated to be $2,981,464.70. On the basis of cost items set forth in the statement of account the court found that the net profit accruing to the defendant from the man-

---

**6.** Defendant's motion also tendered Piller, Swiss Patent No. 272,785 as newly discovered evidence but defendant abandoned such assertion when it was revealed that it had been cited in an interrogatory answer filed by plaintiff Zysset in May 1958. Piller, an onion cutter, like Galant and Hofmann, had a wiper but the multiple blades were slightly curved.

ufacture and sale of infringing devices was $455,293.01, in the computation of which amount deductions as costs, objected to by the plaintiffs but allowed by the court, were made in the amount of $42,830.59 representing expenses incurred by defendant for attorneys' fees and disbursements in this litigation, $109,-192.44 representing a proportionate allocation to the infringing products of the compensation paid to defendant's officers, and $29,356.08 representing a loss sustained by the defendant in connection with the sale of the infringing devices during the period commencing August 1, 1959, and terminating February 12, 1960. Although all three deductions were allowed by the court in its findings, in its conclusions of law the court concluded that a "defendant's costs of litigation, * * * and salaries of officers in a closely held corporation are not properly deductible in arriving at the net profits".

The District Court found that an award to plaintiffs based only upon a reasonable royalty would be in conformity with the law; that upon the basis of the testimony a fair royalty payment would be 4 cents for each of the infringing devices sold by defendant; and that an award to plaintiffs based upon such reasonable royalty "would, together with attorneys' fees,[7] be adequate compensation for defendant's infringement". The $182,325.38 judgment entered for the plaintiffs represents such royalty and attorneys' fees.

The plaintiffs contend that the court erred in not measuring their damages by defendant's profit from the sales of infringing devices computed without allowance of the deductions for cost to which objections were made. The defendant contends that on the facts and circumstances presented by the record an award of damages measured by its profit is not warranted. It further contends the court erred in allowing plaintiffs their attor-

neys' fees and disbursements—that the record does not show the "exceptional circumstances" requisite to the justification of such allowance,[8] nor did the court make a specific finding as to the existence of such circumstances. And that 35 U.S. C.A. § 288 precludes allowance of costs to plaintiffs.

The statute governing damages in patent infringement cases, 35 U.S.C.A. § 284, in so far as here pertinent, provides:

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."

■■ The statute prescribes a reasonable royalty as the minimum measure of damages. But it does not purport to restrict the allowance of damages measured by the infringer's profits where proof of such profits can be and is made, and where under the principles recognized in the decisions such measure of damages is otherwise proper. In this connection we agree with the observation made in Wm. Bros Boiler & Manufacturing Co. v. Gibson-Stewart Co., 6 Cir., 312 F.2d 385, 386, to the effect that in such a case "if profits are susceptible of determination, no royalty should be awarded".

■ The action of Congress in adding its sanction to the already judicially approved use of a "reasonable royalty" to measure damages for infringement (Cf. Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U.S. 641, 648, 35 S.Ct. 221, 59 L.Ed. 398), and establishing such measure as marking the minimum below which such damages should not fall, certainly evinces no intention to substitute "reasonable royalty" as an exclusive measure of damage. This is fully borne out by the record of the committee hear-

---

7. The reasonableness of the attorneys' fees and disbursements claimed were stipulated, but not their allowance.

8. 35 U.S.C.A. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

ings [9] on the proposal to add the provision relative to reasonable royalty to 35 U.S.C. § 70, the section from which present § 284 is derivative.

■■■ An infringer's profits are a traditional measure of damages. Coleman v. Holly Mfg. Co., 9 Cir., 269 F.2d 660, 663. Such profits may be the measure of damages suffered, even though the statute does not prescribe that "profits" are to be recovered as such. Graham v. Jeoffroy Mfg., 5 Cir., 253 F.2d 72, 74. But whether an infringer's profits are to be utilized as the measure of the "damages adequate to compensate for the infringement" to be awarded pursuant to § 284 must, in our opinion, depend upon the facts of the individual case. Cf. Ric-Wil Co. v. E. B. Kaiser Co., 7 Cir., 179 F.2d 401, 407.

Here the actual profits of the defendant were determinable and were evidenced by defendant's own accounting. Unless the nature of the case makes the employment of such measure of damages improper or inequitable it should apply. In its infringing choppers defendant employed the combination of Zysset. There is nothing in the record to support a claim that the marketable value of the infringing devices was attributable to some other feature, patented or unpatented. Thus there was no need to establish, as was the case in National Rejectors, Inc. v. A. B. T. Mfg. Corp., 7 Cir., 188 F.2d 706, 709, where the infringing device incorporated other features licensed under other patents, what the Court there characterized as the "rarity" of the entire marketable value of the infringing device being solely attributable to but the one patented feature—the improvement of one of the parts of the mechanism, covered by plaintiff's patent —in order to justify an award of the defendant's entire profits to the plaintiff.

That "[u]nder such circumstances, the entire profits belong to the plaintiff", does not limit the application of the rule to such situations nor militate against its application here.

The District Court's rejection of profits as a measure of damages and its adoption of what it found from the evidence to constitute a reasonable royalty, which together with attorneys' fees, would provide "adequate compensation for defendant's infringement" appears to be predicated upon its finding that:

"\* \* \* [T]his is one of those rare cases in which an infringement has been a blessing in disguise; that only the skill, salesmanship and business acumen of defendant and its principal officer, Samuel Popeil, has brought a financial reward to the plaintiff in the form of a fortuitous windfall if this judgment is finally collected. \* \* \*"

■■■ The record does disclose that defendant was industrious in the pursuit of its infringing activities and through employment of demonstration techniques and a "sales pitch" sought to fully exploit the marketability of food choppers incorporating the combination features of the Zysset patent. But it took no skill to infringe, and it required no unusual business acumen to recognize the existence of a wide-spread market for such a household device and the possibility of profit inherent in its marketing. The inference that it was only the "salesmanship" of the defendant that enabled it to dispose of 3,152,578 infringing choppers for $2,981,464.70 during the period of its infringement of the Zysset patent is without substantial support in the record. Comparison of comparable production [10] periods of the defendant and New-Nel, the plaintiff-licensee, shows no great disparity in the sales of either.

9. Hearing of January 29, 1946 on HR 5231, House Committee on Patents, 79th Congress, 2d Session, pp. 7, 11, 17–19, 21. Senate Committee on Patents, Report No. 1503, June 14, 1946, 1946 U.S.Cong. Service, pp. 1386–7. And see: 94 Cong. Record 1857 (1946).

10. Defendant did cheapen the construction of its infringing choppers and by successive price reductions culminating approximately 50% achieved an increased sales volume.

Moreover, when after February 12, 1960, the defendant altered its remaining stock of infringing choppers to make them non-infringing, and manufactured only non-infringing choppers, they were being given away with the purchase of one of defendant's other products, a salad maker.

But, in any event, the defendant's financial "success" in reaping profit as an infringer does not in our opinion afford a basis for relegating the plaintiff to recovery of but the statutory minimum measure of damages—a reasonable royalty.

■ From our examination of the record we conclude that the District Court erred in not awarding plaintiffs damages measured by defendant's profits from infringement. The court did make findings with respect to such profits. It is unnecessary to a proper consideration and disposition here that further findings be made. We need but consider whether the court in its computation of profits erred in allowing the deductions to which plaintiffs objected.

■ ■ The deduction allowed for expenses incurred by defendant for attorneys' fees and disbursements in this litigation was improper. Graham v. Jeoffroy Mfg., 5 Cir., 253 F.2d 72, 76; Oil Well Improvements Co. v. Acme Foundry & Machine Co., 8 Cir., 31 F.2d 898, 900; Cf. Computing Scale Co. v. Toledo Computing Scale Co., 7 Cir., 279 F. 648, 660, 677. And the loss sustained by the defendant when it drastically reduced the price of its infringing choppers toward the termination of the infringement period was not a permissible deduction from the profits it had theretofore made. Duplate Corp. v. Triplex Safety Glass Co., 298 U.S. 448, 457–458, 56 S.Ct. 792, 80 L.Ed. 1274; Starr Piano Co. v. Auto Pneumatic Action Co., 7 Cir., 12 F.2d 586, 589.

■ The $109,192.44 which represents a proportionate allocation to the infringing products of the compensation paid to defendant's three corporate officers, who are the owners of the corporation, is not a permissible deduction. Graham v. Jeoffroy Mfg., 5 Cir., 253 F.2d 72, 76; Flat Slab Patents Co. v. Turner, 8 Cir., 285 F. 257, 283.

Adjustment of the defendant's profits, as found by the District Court on the basis of defendant's accounting statement, by the elimination of these three deductions which the court allowed over the objections of the plaintiffs, results in the profit figure $636,672.12. It is our conclusion that the plaintiffs are entitled to judgment for that amount.

The District Court's inclusion of plaintiffs' attorneys' fees and disbursements in the judgment it awarded was not predicated upon a finding of "exceptional circumstances" justifying such an allowance under 35 U.S.C.A. § 285—but was ostensibly for the purpose of augmenting the award of damages computed on a reasonable royalty basis. We are of the opinion that the interests of justice do not require that we remand for a finding as to the existence of a basis for an award of attorneys' fees to plaintiffs.

■ The question of costs is in our view mandatorily governed by 35 U.S. C.A. § 288. That section provides:

"Whenever, without deceptive intention, a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid. The patentee shall recover no costs unless a disclaimer of the invalid claim has been entered at the Patent Office before the commencement of the suit".

Plaintiffs' disclaimer of claim 1 was not filed until July 12, 1960, long after the commencement of this suit, and subsequent to the determination made by this Court on the appeal of the judgment of validity and infringement (276 F.2d 354). In view of this the plaintiffs are precluded from recovery of costs in the District Court or upon these appeals. Liquid Carbonic Co. v. Gilchrist, 7 Cir., 253 F. 54, 58–59; Gottschalk Mfg. Co. v. Springfield Wire & Tinsel Co., 1 Cir., 75 F.2d 907, 908–909.

In Appeals Nos. 13939 and 13940, the judgment order of the District Court entered July 13, 1962, is reversed in so far as it awards damages and attorneys' fees and disbursements in the sum of $182,-325.38, and costs; the cause is remanded to the District Court with instructions to vacate that portion of its judgment order of July 13, 1962, and with directions to enter judgment for the plaintiffs in the sum of $636,672.12, without costs but with interest from the date of its entry.

In Appeal No. 14007, the judgment order of the District Court entered November 13, 1962, is affirmed.

Neither party is allowed costs in this Court in these appeals.

Appeals Nos. 13939 and 13940, reversed and remanded.

Appeal No. 14007, affirmed.