John W. ENGLAND, Plaintiff,

v.

DEERE & COMPANY, a Delaware corporation, Defendant.

Civ. A. No. P-1927.

United States District Court
S. D. Illinois, N. D.
Sept. 6, 1963.

See also 158 F.Supp. 904.

365 U.S. 870, 81 S.Ct. 904, 5 L.Ed.2d 860, the cause was referred to a special master for an accounting of damages.

Plaintiff's patent covers a twine holder designed for use as a component of the knotter assembly on twine-tie balers. Defendant, a farm implement manufacturer manufactured wire-tie balers, only, prior to 1954. About July 1, 1954, defendant began marketing a twine-tie baler which it manufactured using an infringing twine holder as one of its component parts.

Plaintiff sought, and obtained from the special master, an order requiring defendant to file with the master an account of all twine-tie balers manufactured by or for defendant and sold by or for defendant, showing as to each the date of manufacture, sale price, cost of production and net profit, and the fact, if such it be as to any baler, that the infringing twine holders were removed prior to sale; the number of complete knotter assemblies manufactured by defendant, excluding those used on such balers, showing as to each the date of manufacture, sale price, cost of production and net profit, and the fact, if such it be as to any such assembly, that the infringing twine-holders were not used; the number of infringing twine-holders, not included in such balers and knotter assemblies, showing as to each the date of manufacture, sale price, cost of manufacture and the net profit thereon; and a statement of the United States dealer price and the f. o. b. factory retail list price of all Model 214–T and 14–T balers, all knotter assemblies and all twine holders. Such account was to cover the period from June 10, 1953, to the date of such order, October 15, 1962.[1]

Penrose Lucas Albright, Mason, Mason & Albright, Washington, D. C., Max J. Lipkin, Peoria, Ill., for plaintiff.

Charles T. Martin, Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., Miller, Westervelt & Johnson, Peoria, Ill., for defendant.

MERCER, Chief Judge.

A trial of this case resulted in a judgment that plaintiff's patent is valid and that defendant had infringed that patent. England v. Deere & Company, S.D.Ill., 182 F.Supp. 133, after that judgment was affirmed, England v. Deere & Company, 7 Cir., 284 F.2d 460, cert. denied

1. "ORDER OF MASTER TO DEFENDANT TO FILE STATEMENT OF ACCOUNTS

"Pursuant to the interlocutory decree entered and enrolled in the above-entitled suit and in furtherance of the references therein made for the purpose of taking, stating, and assessing an account of the damages to which plaintiff is entitled by reason of defendant's infringement of plaintiff's United States Reissue Letters Patent No. 23,927,

"IT IS HEREBY ORDERED:

"That defendant, on or before December 10, 1962, file with this Master as part of its accounting, an account or accounts, under oath of an officer of said defendant, beginning on June 9, 1953, and continuing to the date of this Order:

"1. The number of twine-tie balers (including the Model 214–T or 14–T Deere Balers) manufactured directly or indirectly by defendant and the number sold by or for defendant, or by and for

Defendant challenges that order by its application to the court for directions to the special master that the requirement for an accounting for its profits be vacated. The cause is now before the court upon that application, plaintiff's opposition thereto and plaintiff's application for instructions requiring the master to broaden the scope of the order for an accounting.

Defendant contends that the order to account for its profits on sales of balers

defendant's United States and foreign subsidiaries, or by and for any dealer of defendant in which dealership defendant has any interest as owner, plus the dates of manufacture of each of said balers except that if any of said balers were sold subsequent to April 18, 1961, defendant should state the date of sale of said balers (provided the infringement device had not been removed from said baler prior to said sale and in such event that fact should be so stated) the price at which each of said balers was sold, and stating as a debit against the same all of the expenses including the cost of material, the direct cost of manufacture and the overhead expenses, itemizing or classifying the said expenses showing for what purpose each of said expenses was made and extending the balance of such account for aid in totaling same and finally casting up the grand total of such balances; specifying which of said twine-tie balers included twine holders as exemplified by plaintiff's Exhibit P–2, in evidence in this cause and those which did not include such twine holders;

"2. The number of complete knotter assemblies, not included in the foregoing, manufactured directly or indirectly by defendant and the number sold by or for defendant, or by or for defendant's United States and foreign subsidiaries, or by and for any dealer of defendant in which dealership defendant has any interest as owner, and the dates of manufacture and sale of each of said knotter assemblies, (it being agreed by the parties hereto that the date of sale of said knotter assemblies except those sold subsequent to April 18, 1961, shall be the date of shipment of said knotter assemblies from defendant's factory in Ottumwa) the price at which each of said knotter assemblies was sold and stating as a debit against same all of the expenses including the cost of material, the direct cost of manufacture and overhead expenses, itemizing or classifying the said expenses showing for what purpose each of said expenses was made, and extending the balance of such account for aid in totaling same and finally casting up the grand total of such balances; specifying which of said knotter assemblies included twine holders as exemplified by plaintiff's

Exhibit P–2, in evidence in this cause and those which did not include such twine holders;

"3. The number of twine holders as exemplified by plaintiff's Exhibit P–2, not included in the foregoing, manufactured directly or indirectly by or for the defendant and the number sold by or for the defendant, or by and for defendant's United States and foreign subsidiaries, or by and for any dealer of defendant in which dealership defendant has any interest as owner, the dates of manufacture and sale of each of said twine holders (the date of sale of said twine holders, except those sold subsequent to April 18, 1961, shall be the date of shipment of said twine holder from defendant's factory at Ottumwa), the price at which each twine holder was sold, and stating as a debit against same all of the expenses including the cost of material, the direct cost of manufacture and overhead expenses, itemizing or classifying said expenses showing for what purpose each of said expenses was made and extending the balance of such account for aid in totaling same and finally casting up the grand total of such balances;

"4. A statement showing for the before stated period, the United States dealer price and the retail list price, f.o.b. factory, for said Model 214–T and 14–T balers, knotter assemblies and said twine holders.

"IT IS FURTHER ORDERED that the defendant shall keep intact all books, papers, vouchers, and other documents relating to the matter at issue, and particularly those on which was entered any date concerning the cost of manufacture of said twine-tie balers, knotter assemblies, and said twine-tie holders, made and sold by and for the defendant, the defendant's United States and foreign subsidiaries, and by and for any dealer of defendant in which dealership defendant has any interest as owner; and all such books, papers, vouchers and other documents shall be retained subject to production on further order.

"AND IT IS FURTHER ORDERED that two copies of said reports be served on the counsel for defendant at the time said reports are filed with the Master.

is contrary to the controlling statute, which provides, in pertinent part:

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. * * *" 35 U.S.C.A. § 284.

Defendant argues that plaintiff's damages are a reasonable royalty upon his invention, or the profit which plaintiff would have derived from lost sales which the infringement occasioned. Defendant further argues that the statute, as amended in 1952, removes the profits of the infringer as a measure of damages, at least, in a case such as this where the infringing article was only one component of a complex manufactured device.

No semantic exercise can gainsay that fact that Section 284 paints the criteria for the fixing of damages in broad strokes, limited only by the provision that damages may not be less than a reasonable royalty. Many elements, including an infringer's profits, may be taken into account as the exigencies of each particular case shall require. Any doubt as to that interpretation is resolved by the opinion and decision in Zysset, et al. v. Popeil Bros., Inc., 7 Cir., 318 F.2d 701.

In that case, the trial court ordered and obtained an accounting by defendant of its profits from sales of a food chopper adjudged to infringe the plaintiff's patent. However, the court held that an award to the plaintiffs based upon a reasonable royalty of four cents for each infringing device would be reasonable. Judgment was entered for plaintiffs for $182,325.38, that sum being the aggregate of royalties computed at four cents upon each infringing item sold and stipulated reasonable attorney's fees.

The Court of Appeals reversed the judgment in part and directed the entry of judgment for plaintiff measured by the defendant's profits, saying that unless the nature of the case makes employment of the profits from infringement improper or inequitable as a measure of damages, such profits are the proper criteria for the assessment of damages.

The court said in pertinent part:

"The statute [Section 284] prescribes a reasonable royalty as the minimum measure of damages. But it does not purport to restrict the allowance of damages measured by the infringer's profits where proof of such profits can be and is made, and where under the principles recognized in the decisions such measure of damages is otherwise proper. In this connection we agree with the observation made in Wm. Bros. Boiler & Manufacturing Co. v. Gibson-Stewart Co., 6 Cir., 312 F.2d 385, 386, to the effect that in such a case 'if profits are susceptible of determination, no royalty should be awarded'.

"The action of Congress in adding its sanction to the already judicially approved use of a 'reasonable royalty' to measure damages for infringement * * *, and establishing such measure as marking the minimum below which such damages should not fall, certainly evinces no intention to substitute 'reasonable royalty' as an exclusive measure of damages. This is fully borne out by the record of the committee hearings on the proposal to add the provision relative to reasonable royalty to 35 U.S.C. § 70, the section from which present § 284 is derivative.

"An infringer's profits are a traditional measure of damages. * * * Such profits may be the measure of damages suffered, even though the statute does not prescribe that 'profits' are to be recovered as such. * * * But whether an infringer's profits are to be utilized as the measure of the 'damages adequate to compensate for the infringement' to be award-

ed pursuant to § 284 must, in our opinion, depend upon the facts of the individual case. * * *" (Citations and footnotes omitted). 318 F.2d at page 701.

■ Defendant's arguments that an accounting for profits is not an allowable criteria for assessment of damages under § 284 and that that Section requires an award of damages based upon the criteria of a reasonable royalty become wholly untenable in the light of the Zysset decision. See also, Henry Hanger & Display Fixture Corp. v. Sel-O-Rak Corp., 5 Cir., 270 F.2d 635, 644, cert. denied 352 U.S. 870, 77 S.Ct. 95, 1 L.Ed. 2d 76; Graham v. Jeoffroy Mfg., Inc., 5 Cir., 253 F.2d 72, 74, cert. denied 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.2d 59; Hartford Nat'l Bank & Trust Co. v. E. F. Drew & Co., D.Del., 188 F.Supp. 353, 358–359, modified 188 F.Supp. 347, aff'd, 3 Cir., 290 F.2d 589, cert. denied 368 U.S. 825, 82 S.Ct. 45, 7 L.Ed.2d 29. Plaintiff is entitled to damages "adequate to compensate" him for the infringement. The profit derived by defendant from its illegal act is certainly competent evidence to be considered with other relevant evidence in assessing adequate compensation, C. f., Ric-Wil Co. v. E. B. Kaiser Co., 7 Cir., 179 F.2d 401, 407, cert. denied 339 U.S. 958, 70 S.Ct. 981, 94 L.Ed. 1369.

■ The theory of damages in patent litigation is to deny to the infringer the fruits of his illegal act and to restore to the patentee the benefits which he would have derived from his monopoly had he not been denied the infringing sales. Where as here, the infringing device is one of many components of a machine manufactured and sold by the defendant, the value of the infringing device as a part of the whole is the ultimate goal of inquiry. Such a component may so contribute to the commercial success of the whole as to attain a value far in excess of the unit sale price of the component as a separate article of commerce.

National Rejectors v. A. B. T. Mfg. Corp., 7 Cir., 188 F.2d 706, 709, is closely in point. The trial court found that the whole success of defendant's slug rejector was derived from the infringing use of a single patented component. Upon that finding, the Court of Appeals affirmed a judgment awarding to the plaintiff all of the defendant's profits from sales of its rejectors.

Union Carbide Corp. v. Graver Tank & Mfg. Co., 7 Cir., 282 F.2d 653, 671–672, aff'd in part Graver Tank and Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672, is of interest also. The patent there in suit related to a process for manufacturing welding flux. The trial court assessed Carbide's damages upon the basis of a royalty of 5¢ per pound of infringing flux sold, a royalty figure which took into account the defendant's profits on certain non-infringing related materials. In affirming that part of the judgment, the court said, in pertinent part, 282 F. 2d at 671–672:

"* * * It seems a logical and common sense view that Lincoln [the infringer], if it had been negotiating with Union Carbide for a license, would have taken into consideration all advantages which might accrue to it in determining a royalty which it would be willing to pay. A license to sell the patent flux would have enabled Lincoln to expand its business, increase its sales of non-infringing materials and thereby increase its profits. Absent a license, Lincoln accomplished the same result by the sale of its non-infringing material in connection with the sale of its infringing flux. * * *"

In Graham v. Jeoffroy Mfg., Inc., 5 Cir., 253 F.2d 72, 74, cert. denied 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.2d 59, the court said that the profit of an infringer attributable to his use of the infringing device is evidence of, and may be the measure of, the patentees damages. The patent in Graham covered a spring clamp for use on a plow. The defendant, a plow manufacturer, used the patented clamp upon plows which it manufactured and sold. The court approved a

**324**

finding that the defendant's success in plow sales was largely attributable to the use of the infringing clamp and held that an award of damages based upon 60% of defendant's profit on plows was justified.

■ Plaintiff should have the opportunity to prove the fact, if it be a fact, that the contribution of the infringing twine holder to defendant's baler sales success exceeded the value which plaintiff placed upon his holder in his sales thereof as replacement parts. I think it insignificant that plaintiff and defendant are not competitors in the sale of balers. And I reject defendant's thesis that plaintiff's damages cannot exceed the profit which he would have enjoyed had he manufactured and sold the infringing holders. Defendant elected to use the infringing holder upon its balers in preference to non-infringing holders then available. The record reveals that that choice followed exhaustive experimentation with a number of twine holders. The short answer to defendant's thesis is that it declined plaintiff's invitation to negotiate a licensing agreement for its use of plaintiff's patented holder—it elected to steer an infringing course upon advice that the patent was not valid. The profit advantage which it thereby gained in entering the twine-tie baler market may well exceed the plaintiff's normal profits upon his sales of the holders. That advantage is a factual issue susceptible of proof, and the accounting ordered may well accord to plaintiff the information necessary to that proof. In any event, the adoption of defendant's thesis would have the effect of creating a mandatory, forced licensing of the invention.

Of course, allocation of defendant's profits attributable to the infringing holder may pose a substantial, or even insurmountable, problem. Be that as it may, the power does not lie in the mouth of an infringer to claim that allocation would be impossible while it retains information as to its sales and profits which might hold the key to that determination.

It is true that the master's order does impose a substantial burden upon defendant. To my mind, however, that burden is a reasonable one and a foreseeable consequence of defendant's course of action in deliberately making itself an infringer.

■ Plaintiff, by his cross application, prays directions to the master to require defendant to account, also, for the profits of all Deere dealers upon balers, knotter assemblies and twine holders employing the infringing device, and for sales by plaintiff, its subsidiaries and dealers of wire-tie balers from 1939 to date and the profits therefrom derived, and to allege in its account the grounds upon which it claims apportionment of its baler and knotter assembly profits if defendant contends that only a part of such profits are attributable to plaintiff's invention.

The first request will be denied. Plaintiff is entiled to recover from defendant damages "adequate to compensate" him for the infringement. The master's order as now framed requires an accounting of the profits of dealers in which defendant has a property interest. I can see no purpose in requiring more. Since profits, as such, are not the statutory measure of plaintiff's damages, the activities of dealers bear no reasonable relationship to the issue of "adequate" compensation.

To me, the least strenuously advanced of the three requests bears the most relevant relationship of all to the issue before the master. That is the request for an accounting for defendant's sales of and profits upon wire-tie balers. The issue here revolves around a transition in defendant's manufacturing practice from all wire-tie balers to a substantial volume of twine-tie models. I think it pertinent to inquire about and to know the relative picture of plaintiff's baler sales success both before and after that transition. Plaintiff's request for such information is meritorious.

I also think it reasonable to require defendant as a part of its accounting to

allege the basis upon which it contends for apportionment of its profits.

It is, therefore, ordered as follows:

a. Defendant's application for instructions to the master is denied.

b. Plaintiff's application for instructions to the master to order an accounting for all dealers' profits is denied.

c. Plaintiff's application for instructions to the master to order an accounting for the defendant's sales of and profits upon wire-tie balers and to order defendant to state in its account the basis upon which it contends for apportionment of its profits is allowed.