JOHN O. BUTLER
COMPANY, Plaintiff,

v.

BLOCK DRUG COMPANY,
INC., Defendant.

No. 81 C 4064.

United States District Court,
N.D. Illinois, E.D.

March 8, 1985.

Charles Laff, Chicago, Ill., for plaintiff.

Albert Bicknell, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

### I. *Nature of the Action and the Parties*

Plaintiff, John O. Butler Company, is a Delaware corporation with its principal place of business at 4635 West Foster Avenue, Chicago, Illinois, 60630. Butler is engaged in the manufacture, distribution and sale of oral hygiene and dental products.

Defendant, Block Drug Company, Inc., is a New Jersey corporation, doing business in this district and located at 105 Academy Street, Jersey City, New Jersey, 07302. Block is also engaged in the business of manufacturing, distributing and selling denture, dental care, oral hygiene and professional dental products.

The controversy before this court involves sale of an interproximal cleaning device by Block in direct competition with Butler. An interproximal device is used for cleaning interproximal areas of the teeth (i.e., areas between adjoining teeth) which cannot be cleaned properly with a conventional toothbrush or dental floss.

Count I of the Second Amended Complaint charges Block with willful infringement of Butler's PROXABRUSH trademark, false designation of origin, false description or representation as to Block's goods, unfair and deceptive trade practices, injury to business reputation, dilution, misappropriation, consumer fraud and deceptive business practices, and unfair competition resulting from Block's use, advertising and sale of an interdental or interproximal toothbrush under the mark PYCOPROX. Counts II and III of the Second Amended Complaint charge Block with infringement of two design patents, namely, U.S. Patent No. Des. 262,236, entitled "Holder for Interproximal Brushes" (PX 70A, DX 9), and U.S. Patent No. Des. 262,316, entitled "Holder (Without Sleeve) for Interproximal Brushes" (PX 70C, DX 8). Butler seeks to enjoin Block from continuing the alleged improper conduct and further seeks an accounting for damages and an award of punitive damages, costs, and attorney's fees. This court has jurisdiction by virtue of Title 15 U.S.C. §§ 1114(1), 1121 and 1125(a); and Title 28 U.S.C. §§ 1331, 1332 and 1338(a). The court also has jurisdiction over the pendent claims arising under state law pursuant to 28 U.S.C. § 1338(b). The matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs. Venue lies in this district by virtue of Title 28 U.S.C. §§ 1391(b) and (c) and § 1400(b).

Block has denied Butler's charges. It has affirmatively pleaded and counter-

claimed (First and Second Counterclaims) that Butler's design patent Nos. Des. 262,-236 and 262,316 are invalid, unenforceable, and not infringed. By its Third Counterclaim, Block seeks a declaration of invalidity, unenforceability and non-infringement of a third design patent owned by Butler, i.e., U.S. No. Des. 262,315, entitled "Holder (With Sleeve) for Interproximal Brushes" (PX 70B, DX 7). Block further seeks an award of its costs, expenses, and attorneys' fees in this action and an injunction against Butler's assertion of U.S. Patent Nos. Des. 262,236; 262,315 and 252,316.

## II. *Plaintiff's Patent in Suit*

Butler is the owner by assignment from the named inventors, E.B. Tarrson, Steven Tisma and Robert Staubitz, of all rights in, to and under United States Patent Des. 262,236, entitled "Holder for Interproximal Brushes," which was filed on March 5, 1979 and issued on December 8, 1981 (PX 70A, DX 9). The patent claims: "The ornamental design for a holder for interproximal brushes, as shown." This patent relates specifically to the plastic PROXABRUSH handle design marketed by Butler.*

## III. *The Development of Butler's PROXABRUSH Product*

Butler's first PROXABRUSH interdental toothbrush had a metal handle (PX 120 [PX 213]), which was developed and marketed in the latter part of 1967, and is the subject of U.S. Patent No. 3,559,226 (PX 346E). The handle was designed so that the twisted wire brushes could be replaced on the handle after they became worn. This metal handle also had an aperture in the head for holding a toothpick in place of a twisted wire brush.

Since about 1968, Butler has marketed a metal interdental toothbrush holder under the trademark PROXABRUSH (Trial Tr. 155 [Tarrson]). Butler also sells a series of replaceable twisted wire brushes under its PROXABRUSH trademark (PX 479, PX 480, PX 481, PX 482). The refill brushes are sold by Butler in four different sizes, under Butler product code Nos. 612, 614, 618 and 620. The # 614 tapered brush is the most popular. As a brush wears out, a customer purchases refill brushes and inserts them, as required, in the metal or plastic handles.

In about 1973, Butler began working on the development of a new plastic interdental handle. In 1977, Butler retained an industrial designer to create the new plastic interdental handle (Trial Tr. 157–158 [Tarrson]; Staubitz, p. 19). This plastic interdental toothbrush handle is sold under the mark PROXABRUSH, employs the same twisted wire brushes that are used with the metal handle, and has a hole at the end opposite the wire brush end for insertion of a wooden toothpick. Similar to the metal handle, the plastic handle permits the replacement of worn twisted wire brushes.

The plastic interdental toothbrush handle was invented by E.B. Tarrson, Steven Tisma and Robert Staubitz, and the design patent in suit was thus filed in their names. An object of Butler's efforts was to design a reusable plastic holder that was less expensive than the PROXABRUSH metal handle and aesthetically appealing (Trial Tr. 157 [Tarrson]).

During the development of Butler's plastic interdental brush holder, various drawings were prepared of proposed designs which, among other things, included different sizes and angles for the ends of the handle (Staubitz, pp. 17–45). Butler started with a design that would give some aesthetic look from a design standpoint (Tarrson, p. 129). The inventors, Tarrson, Tisma and Staubitz, had several meetings at which they discussed various ideas and prepared sketches for the new plastic PROXABRUSH handle, including whether

---

* *Plaintiff's complaint actually sought a determination that three of its design patents had been infringed. However, at trial, plaintiff presented evidence only regarding infringement of U.S.* Patent No. Des. 262,236. *Plaintiff agreed that if it did not establish infringement of the '236 patent it would not seek to establish infringement of its other patents.*

to make it straight or bent, how thick the handle should be and how to attach the brush to the handle. Prototypes were made to evaluate the aesthetic features of the proposed handle (Trial Tr. 157–162 [Tarrson]).

Staubitz prepared drawings and slides of at least four different handle designs for Butler's new plastic PROXABRUSH handle (PX 351, PX 352, PX 353, PX 354; Staubitz, p. 17). Each was different in design from what ultimately became Butler's plastic PROXABRUSH handle. These designs were presented to Tarrson with Tisma present on August 5, 1977 (Trial Tr. 157–160 [Tarrson]; Staubitz, p. 38). At that time, Tarrson selected a handle with a round cross-section because it presented an attractive appearance and because of the consumer recognition in that shape resulting from Butler's use of the round metal PROXABRUSH handle which had been available from Butler for many years (Staubitz, p. 48). It was also decided that the PROXABRUSH name would be molded in the handle and that the handle would be an orange color (Staubitz, p. 40). The results of this first meeting are shown in the rendering in PX 515 (Staubitz, pp. 32, 35, 40, 41). In the beginning, Butler was not concerned about the mechanics of the handle, but just wanted to evaluate the proposed cosmetic features.

Subsequent to the first presentation, Staubitz continued further design work on the handle, including adding ribbing and determining, together with Tisma and Tarrson, an angle for the brush holding end of the plastic handle (Staubitz, p. 42). It was later decided to make a handle with essentially symmetrical ends—one for holding the brush and the other to hold a toothpick (Trial Tr. 163–164 [Tarrson]; Staubitz, pp. 51–52). Mr. Staubitz also showed a variety of different ways to help prevent slippage relative to the gripping portion of the handle (Staubitz, p. 53). The ribbing on the handle was depressed, rather than raised, because of Staubitz's personal preference about the way it felt (Staubitz, pp. 121–123). Mold and part drawings were made of the handle, and models were made to study the brush locking mechanism and the break-off of toothpicks put in the hole in the toothpick end of the handle. Consideration was given to using both a round hole and a triangular hole for the toothpick end (Staubitz, pp. 55–56).

The plastic PROXABRUSH handle as finally designed was unique in the marketplace and experienced significant commercial success. Sales of the plastic handles are in excess of 1.5 million since 1979 and sales of the refill brushes exceed 5.5 million during the same period.

## IV. *Defendant Block's Interproximal Device*

Block's first involvement with an interdental toothbrush began when its Chairman, Mr. Leonard Block, was provided with a PROXABRUSH metal handle device and replaceable brush refills during a visit to his periodontist in January 1978 (Uncontested Facts, ¶ 15; PX 8). Block began considering the development of a product to compete with Butler's PROXABRUSH holder and assessed the potential for this type of product for Block (PX 8). In February 1978, Block instituted inquiries with wholesalers and retail stores to determine the volume of sales of Butler's PROXABRUSH products (PX 9, PX 10).

In February 1978, Block's sales representatives conducted a national survey of 507 dentists, and 28.6% (145) recommended or dispensed Butler's PROXABRUSH product (PX 12). From the very beginning in February 1978, Block did not focus on developing a new product, but rather on how to copy Butler's PROXABRUSH interdental brush and gain the benefit of Butler's good will and reputation in this product. (PX 300, PX 74, PX 157, PX 158.)

Block started evaluating the feasibility of marketing such a product emphasizing that the product be similar to Butler's as evidenced, *inter alia*, by its reference to this project as the "PROXABRUSH approach" (PX 72), and even referring to its proposed product as a "PYCOPAY PROXABRUSH" (PX 75).

In 1978, Block thought it could get into the market fastest through acquisition, rather than product development. It sought acquisition of Butler, Denticator, and Crescent to move immediately into the interdental brush market (PX 73; Trial Tr. 576 [Goodman]). Block could not acquire Butler, and Block's chairman did not believe that the other company's products were as good as Butler's product (PX 74). Thus, Block decided to develop a brush "similar to PROXABRUSH" (PX 73).

Block was also impatient as to how many years it takes to get dentists to recommend new products, but was aware of Butler's outstanding reputation in the dental field for selling interdental brushes. Block knew it would be easier to sell an imitation of Butler's handle and brush, than a totally new brush (Block, pp. 48, 62).

In August 1978, following this approach, Block's chairman sought comments from periodontists as to what improvements might be made over Butler's PROXA-BRUSH device (PX 119), in an attempt to avoid patent infringement. Block believed that the only significant competitor in the field was Butler (Block, p. 64).

Block originally proposed a design comparable to Butler's metal PROXABRUSH handle, except made from plastic (Trial Tr. 597, 600–601 [Goodman]; McGugins, p. 19); but, after Block became aware of Butler's plastic PROXABRUSH handle, it sought to duplicate it, rather than the metal handle (Trial Tr. 686–689 [Goodman]; McGugins, pp. 39, 202, 239–240).

Prior to contacting manufacturers, Block obtained drawings of one concept for a handle from Gene Harwin of the William Douglas MacAdams advertising agency, but Block's vice-president, John Goodman, did not like the design. This concept employed a handle similar to a toothbrush (Harwin, pp. 9–11). Harwin's successor, Gene Fine, testified that the agency did not design Block's product (Fine, p. 14), and Block's product manager at the time of the development of the PYCOPROX product never saw the concept drawing and testified that no design consulting firm or other type of firm was hired to submit concept drawings or sketches (McGugins, p. 276). Harwin's and Fine's testimony contradicted the testimony of Mr. Goodman that the agency submitted six to twelve designs to Block and that Block may have used some of these ideas (Goodman, pp. 62–66, 71).

Another of Block's surveys reported in February and March 1979, that a "PROXA-BRUSH type device is felt to be the most beneficial and consequently most marketable periodontic device," and Block concluded it would be beneficial to market a "modified PROXABRUSH device" (PX 75). Butler's PROXABRUSH handle was most favored by 61% of the periodontists surveyed (PX 100 [PX 118]). The survey also showed strong support for a toothbrush handle employed by Block, and Block's vice-president recommended a modified version of this toothbrush handle for Block's interdental brush (PX 100; Trial Tr. 665–666 [Goodman]).

In March 1979, Block's Chairman recommended a design similar to Butler's PROX-ABRUSH interdental brush because it "might attract more professional/consumer support" (Block, p. 86; PX 502).

Block neither sought nor engaged a designer to design the PYCOPROX product (Trial Tr. 670–671 [Goodman]; McGugins, pp. 259, 276, Goodman, p. 142, Block, p. 41, Purcell, pp. 38, 78).

Block's Vice President of Dental Operations, John Goodman, could not identify what person was ultimately responsible for the design of Block's handle (Goodman, p. 32), and testified that Block did not hire any independent designers apart from its manufacturers (Trial Tr. 670–671, 735 [Goodman]).

Block's Research and Development Department had nothing to do with the design of the PYCOPROX handle (Brogle, p. 18), but only became involved in the product after the initial marketing. This involvement was limited to developing quality control specifications for the product (Brogle, p. 9).

Block copied Butler's PROXABRUSH plastic handle, thus saving on the expense and time of independent design (PX 81). Block's witnesses assert that Block's PYCOPROX design was an attempt to make a product that resembled an operative dental instrument, but none of those involved with the PYCOPROX project ever obtained, studied or referred to any such dental instruments in connection with the creation and development of Block's product (McGugins, pp. 226–227). Only the Butler PROXABRUSH handles and brushes were used as references for the PYCOPROX project. Moreover, operative dental instruments have an infinite variety of shapes and appearances all of which differ substantially from Butler's plastic PROXABRUSH handle (PX 392; Trial Tr. 294–297 [Porter]; 1234–1236 [Kostanecki]).

Block then turned to attempting to identify a manufacturer to produce its interproximal device (McGugins, p. 16). Block first approached Owens Brush Company as a possible supplier. Block furnished Owens with a PROXABRUSH metal handle as well as a German model (PX 13, Trial Tr. 597). Owens declined to attempt to manufacture the product.

Block then sought assistance from Henlopen which submitted a prototype to Block. Henlopen designed several different handles for Block which did not resemble Butler's PROXABRUSH handle. Block was unhappy with these designs and held a meeting with Henlopen where Block described the product it wanted using Butler's interdental brush handle as a guide. Block then learned of Butler's new plastic handled interproximal device and provided Henlopen with one of these handles suggesting that Henlopen duplicate it for Block (Trial Tr. 605–606, 688–690). Henlopen then sent a drawing showing a handle virtually identical to Butler's plastic PROXABRUSH which Block approved.

Thereafter, because Henlopen did not wish to supply an assembled brush and handle, Block sought a second manufacturer which it eventually located in Anchor Brush Company. Block provided Anchor with the samples and a drawing that illustrated the handle which is substantially identical to Butler's plastic handle. Block later marketed its product under the name of PYCOPROX. The court finds that the Block PYCOPROX interdental device is essentially identical to the Butler design patent '236. The court further finds that Block simply copied the Butler product rather than design its own.

Block has defended on the grounds that Butler's design patent '236 is invalid, unenforceable and not infringed and the court now turns to a consideration of each of Block's claims.

■ The court begins with the presumption that Butler's '236 patent is valid and recognizes that the burden of establishing invalidity rests on the party asserting such invalidity. *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1459 (Fed.Cir.1984). In order for a design patent to be valid it must present a design which is new, original and ornamental. 35 U.S.C. § 171 (1976); *Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166 (6th Cir.1980). The court finds that design patent '236 meets all of those requirements. Butler's inventors provided a modernistic design with distinctive flowing lines to create an ornamental article of manufacture possessing a different and more pleasing appearance than existed in the prior art. The court has examined all of the prior art submitted by the defendant including that art which was not considered by the Patent Examiner. The court finds that the only prior art not considered by the Examiner which merits discussion are the Snyder and Felt patents, PX 74 and Px 191, which are dental instruments. However, the court concludes that the design patent in suit, while somewhat similar to those patents, is not made obvious by them. The genius of the design patent in suit is its use of the dental instrument concept, that is, the double working ends at contra angles to the handle. That feature makes the interproximal device familiar to both dentists and patients alike and gives the product an overall profession-

al appearance. The court finds that none of the prior art, including that not considered by the Patent Examiner, detracts from the newness or originality of the Butler design which was in every sense a unique concept for an interproximal cleaning device.

Block points out that the design patent has functional aspects and argues that the patent in suit is in fact dictated primarily by functional considerations. As such, Block argues, the design does not comply with the ornamental requirement of § 171.

■ While it is true that Butler's design embodies some functional features, that fact alone does not make the design unpatentable. *Landes Manufacturing Co. v. Chromodern Chair Co.*, 203 U.S.P.Q. 337 (C.D.Cal.1978). Here the court finds that the Butler design patent is not dictated solely by function. Other designs could easily fulfill the same function. *L.F. Strassheim Co. v. Gold Metal Folding Furniture Co.*, 294 F.Supp. 708, 714 (E.D. Wis.1968). The evidence at trial of Mr. Kostanecki (Trial Tr. 351, 354) and Dr. Porter (Trial Tr. 305 and 306) established to the court's satisfaction that there were a variety of alternative designs available which would have fulfilled the same function as Butler's design patent.

■ The defendant also argues that the design patents are invalid under 35 U.S.C. § 103 which "prohibits a patent from issuing when the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made." *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1440–1441 (Fed.Cir.1984). The court has considered the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the art. The court concludes that none of the prior art made the Butler design patent obvious. Accordingly, for the reasons set forth above, the court finds the Butler design patent '236 to be valid. Accordingly, the court turns to a consideration of whether the defendant's

PYCOPROX product infringed the plaintiff's design patent.

■ The infringement of a design patent involves a two-part test. *Litton Systems, Inc. v. Whirlpool Corp., supra; Sears, Roebuck and Company v. Talge*, 140 F.2d 395 (8th Cir.1944). The test to be applied by this court is whether in the eye of the ordinary observer two designs are substantially the same and that similarity deceives a prospective purchaser, inducing him to purchase one supposing it to be the other. Secondly, the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art.

■ Block points out that its product is not identical, relying primarily on the fact that its cleaning brush is permanently affixed to the handle rather than being replaceable as with the Butler design product. However, the court finds that in the eye of an ordinary observer, the two designs are substantially the same. Slight differences are not sufficient to avoid infringement. *Litton Systems, Inc. v. Whirlpool Corp., supra.* The court's conclusion of substantial identity of appearance is supported both by its own visual inspection as well as evidence produced at trial. The court gives significant weight to the Butler survey which was conducted by a well known expert, Robert Lavidge, whose survey methods have been approved by the Seventh Circuit. *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir.1976). The court does recognize that the Oxtoby-Smith critique of Butler's surveys has some merit but is not persuaded that the results of the surveys are to be disregarded. The Butler survey results support a conclusion that Block's imitation of Butler's design patent has confused the ordinary observer. The court concludes that Butler has shown by a preponderance of the evidence that Block's PYCOPROX brushes are a direct infringement of Butler's design patent '236.

■ Butler also seeks relief under the trademark statutes of the United States, 15 U.S.C. §§ 1114(1), 1121, and 1125(a). More

particularly, Butler claims that the PYCO-PROX designation of the Block product is a false designation of origin or a false description or representation of the Block product. Butler has a Federal Trademark Registration for the trademark PROXA-BRUSH, numbers 873,775 and 1,191,119. While the court finds that the mark PROX-ABRUSH is a strong mark and entitled to broad protection, the court does not believe that the term PYCOPROX infringes on that mark. Pyco, the first portion of the Block product, is a designation previously used by Block with many of its products and Block's use of the word prox, in the court's view, does not result in such a designation of the Block product so as to confuse the purchasing public. Accordingly, the court finds that the plaintiff has not sustained its burden of showing a trademark infringement involving Butler's PROXABRUSH product. The term prox is well known and commonly used in the dental field and in the court's view can be used by the defendant to designate holders for interproximal brushes. The court further finds that the trade dress and packaging of the product substantially reduces any likelihood of confusion.

■ The plaintiff's remaining charges focus on four allegations claimed to be false or deceptive practices which are claimed to violate § 43(a) of the Lanham Act (15 U.S.C. 1125(a)) and various state unfair competition laws. The court finds no merit in any of these claims by the plaintiff. In large measure plaintiff's claims of unfair competition arise from statements made by defendant during a period when defendant was test marketing its PYCOPROX device. The statements made by Block during that period were abandoned long before Block introduced its product on a nationwide basis. The court finds that while Block's statements with respect to PYCOPROX were ill advised, plaintiff has failed to show any customer reliance on the false advertisement. *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 206 (7th Cir.1982). The court finds that the other alleged false claims by Block were in fact made with a justifiable basis.

In a very real sense, the PYCOPROX product was professionally designed and Block did conduct tests, albeit perfunctory, to support its other claims for its product in the marketplace. Accordingly, the plaintiff's claims based on the Lanham Act and other unfair competition laws are denied.

### V. *Damages for Patent Infringement*

■ The trial court has considerable discretion in determining and awarding relief. It is clear that plaintiff is entitled to compensatory damages resulting from defendant's patent infringement under 35 U.S.C. § 284 and also under 35 U.S.C. § 289 since the patent was a design patent. *Landes Manufacturing Co. v. Chromodern Chair Co.*, 203 U.S.P.Q. 337, 340 (C.D.Cal.1978). Butler is entitled to recover lost profits based on that portion of Block's sales that they would have made. *Central Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 1577, 1579 (Fed.Cir.1983). Butler has shown that Block's sales campaign was designed to divert sales from Butler's customers and Butler had the capacity to meet the demand for the patented item. *Bio-Rad Laboratories v. Nicolet Instrument Corp.*, 739 F.2d 604, 616–617 (Fed.Cir. 1984). Thus, Butler's lost profits or damages may be measured by the profits made by Block, particularly when there is no evidence of Butler's profit margin on the product in issue. *Zysset v. Popeil Brothers, Inc.*, 318 F.2d 701, 707 (7th Cir.1963).

■ The court adopts the incremental income method for establishing Block's profits and thus Butler's damages. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed.Cir.1983). Under that approach, fixed or indirect costs such as management and administrative salaries which do not vary with increases in production, are excluded in determining profits. *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed.Cir.1984).

Block at trial attempted to demonstrate that ordinary accounting principles should be used in determining its profits. However, the court finds that Block did not

meet its burden of proving that the testimony of Mr. Steven Willis, plaintiff's damage expert, is improper in any significant way. Mr. Willis determined that Block's incremental profits on the sale of its PYCOPROX product from December 1981 through March 31, 1985, was $660,796.00 (Trial Tr. 517, PX 524, p. 1.) Block's incremental profits increased by the amount of its net investment income because through its profits it had the use of that money for its benefit. Adopting the approach of applying Block Drug's borrowing rate for its money as determined by Mr. Willis, the court concludes that the net investment income to Block from its profits was $118,-598.00. Accordingly, the court awards damages against Block and in favor of Butler for the patent infringement in the amount of $779,394.00.

Plaintiff also seeks a trebling of the damage amount found by this court as well as attorneys' fees. The court has determined that such claims should be denied. The evidence at trial does not indicate a willful infringement because Block did not have knowledge of the patent rights claimed by Butler. Although Block was aware of patents covering the Butler metal handled device, it proceeded on the assumption that Butler was protected by utility patents, not design patents. Both the Butler metal handled device and the plastic PROXABRUSH have utility patents directed toward the locking mechanisms of those devices. Shortly after the introduction by Block of its PYCOPROX device, Block was notified of an unspecified number of pending patent applications but was not notified as to whether the applications were for design or utility patents. In view of the fact that plaintiff's design patents had not issued at the time Block began its production of its PYCOPROX product and that it did not learn of those design patent rights until it was defending this suit, the court does not feel it appropriate to find a willful infringement. *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226 (Fed.Cir.1985). Finally, 15 U.S.C. § 1117 provides this court with discretion to award reasonable attorneys' fees to the prevailing party in exceptional reasons. For the reasons stated above, the court finds no evidence that this case warrants such an award.

Accordingly, damages in the amount of $779,394.00 are awarded to Butler for patent infringement. The court also hereby enjoins Block Drug Company from the sale of its PYCOPROX interproximal cleaning device beginning 30 days after the date of this order.